[Sac. No. 691. Department One.—October 29, 1900.]

MARY B. ODELL, Respondent, v. WILLIAM S. MOSS, by JOHN C. THOMPSON, Guardian, Appellant.

QUIETING TITLE — INCOMPETENT DEFENDANT — DEED TO PLAINTIFF — TRUST RELATION—FINDINGS AGAINST EVIDENCE.—In an action by a sister of a defendant adjudged incompetent, to quiet title derived from his deed to her, findings that he was competent when he made the deed, that it was not procured by fraud or undue influence, and that plaintiff paid an adequate consideration therefor, are against evidence which shows that defendant's habits of intoxication had long before impaired his capacity to manage his property, that he reposed special confidence in his sister, that he made the deed to her without consideration, other than an expectation of support, that she declared that the property was to be managed by her for his benefit, and that for a long time she regarded herself and acted as his trustee of the property, to be accounted for with vouchers, until she finally repudiated the trust.

ID.—DEFINITE AGREEMENT FOR SUPPORT AS CONSIDERATION—FAILURE OF PROOF.—Evidence showing a mere expectation on the part of the brother that the sister was going to pay for his support the sum of seventy-five dollars per month, without any testimony of the plaintiff that there was such an agreement, and without the production of any written contract to that effect, does not establish such an agreement as a consideration for the deed.

ID.—BROTHER AND SISTER—FIDUCIARY RELATION — SPECIAL TRUST AND CONFIDENCE. — The mere relationship of brother and sister is not of itself fiduciary, but it is a material circumstance in determining whether, as matter of fact, a fiduciary relation existed between them, which is more easily superinduced by reason of the blood relationship; and where it appears that special trust and confidence is reposed by one of them in the other, the one who occupies the superior position has the duties and responsibilities of a trustee, with the attendant consequences of the trust relation.

ID.—DEED FROM BENEFICIARY TO TRUSTEE—WANT OF ADEQUATE CONSIDERATION—PRESUMPTION—CONSTRUCTIVE FRAUD—UNDUE INFLUENCE —BURDEN OF PROOF—FINDING AGAINST EVIDENCE.—A deed from a beneficiary to a trustee without adequate consideration is presumed invalid and constructively fraudulent, and to have been obtained by undue influence. The trustee has the burden of proving the contrary, and of showing a compliance on his part with every equitable prerequisite to the validity of the deed; and in the absence of such proof, a finding that the deed was

not obtained by fraud or undue influence is unsupported by the evidence.

ID.—STATUTE OF LIMITATIONS — PAROL CONTINUING TRUST NOT CONSTRUCTIVE — REPUDIATION — KNOWLEDGE OF BENEFICIARY.—A parol trust, voluntarily assumed, which, by the understanding of the parties, was to be a continuing one, is not merely constructive; and the statute of limitations does not begin to run in such case against the beneficiary until a repudiation of the trust by the trustee has been brought home to the knowledge of the beneficiary.

APPEAL from a judgment of the Superior Court of San Joaquin County and from an order denying a new trial. G. W. Nicol, Judge presiding.

The facts are stated in the opinion of the court.

J. G. Swinnerton, and Budd & Thompson, for Appellant.

Louttit & Middlecoff, for Respondent.

THE COURT.—Appeal from a judgment in favor of the plaintiff and from an order denying defendant's motion for new trial.

The suit was brought to quiet the plaintiff's title to certain lands, consisting of a tract called the "Lindstrom tract" and an undivided interest in another tract. The defendant is an incompetent, and appears by guardian. The complaint is in the usual form. The case set up in the answer and cross-complaint is in effect that plaintiff's title was derived from the defendant—who is her brother, and alleged to have been of feeble intellect—by deed of date September 27, 1889; and that the deed was obtained by fraud and undue influence; also that the deed was intended as a mortgage to secure anticipated expenditures by the plaintiff for the care and maintenance of the defendant. The defendant also pleaded as an estoppel the judgment in a partition suit in the same court, in which plaintiff and defendant were parties; by which the Lindstrom tract was allotted to the plaintiff "as the owner thereof in severalty, subject, however, to an undetermined interest therein of the defendant . . . . Moss, such interest to be ascertained (thereafter) in some subsequent action or proceeding between" them.

The findings of the court were in favor of the plaintiff on all

the material issues; and especially, it was found, in effect, that the defendant was competent at the time of executing the deed; that the deed was not procured by fraud or undue influence; that it was not intended as a mortgage, and that the plaintiff "gave and paid an adequate consideration for said land"; and also that the cause of action set up in the cross-complaint was barred by numerous provisions of the statute of limitations.

The principal question involved is as to the sufficiency of the evidence to support these findings.

It is found by the court that at and prior to the execution of the deed in question the defendant was not technically incompetent (Code Civ. Proc., sec. 1767), and that he was sober and competent when he executed the deed. But it appears from the evidence that at the time of the execution of the deed he had long been addicted to habits of intoxication, and that his capacity of taking care of himself and his property had been more or less impaired.

The deed in question, executed November 27, 1889, was followed by another deed of date November 29, 1889, conveying to the plaintiff another tract of land. The land conveyed by the latter deed was of the value of eleven thousand six hundred dollars; the land in controversy of the value of from six thousand to ten thousand dollars. The deed of November 29th was accompanied by a written agreement to reconvey on the twenty-ninth day of November, 1894, if at that time the defendant should have repaid to plaintiff all taxes, assessments, and advances made by her, with interest at eight per cent per annum. On the same day with the first deed a power of attorney was also executed, which is important as fixing the date of certain declarations of the defendant as given by one of plaintiff's witnesses.

The power of attorney was acknowledged before one Fraser, a notary public, who was also president of the Farmers' and Merchants' Bank of Stockton, and the plaintiff's banker. Fraser testifies that when the defendant came in to acknowledge it he said "he had deeded or intended to deed his property to his sister and that she was going to maintain him, .... that she was going to support him, and he was going

to convey his property." The same witness testifies, with reference to the agreement accompanying the deed of November 29th, that he understood from the defendant that Mrs. Tam (now Mrs. Odell) was to pay him seventy-five dollars per month, and that she instructed the bank to pay him, during her absence, that amount; and a voucher was introduced showing the payment of seventy-five dollars November 30, 1889.

Another witness (the half-sister of plaintiff and defendant) testifies that the plaintiff told her "she would take care of Billy [the defendant], and look after his property; keep it from falling into other people's hands; that she would allow, nobody to steal it from him; that was at the time she took up the management of Billy's property. . . . . She always said, always claimed that she had vouchers she could produce at any time as to the way she had managed his property."

It was on the affidavit of this witness that a guardian *ad litem* was appointed in the partition suit referred to in the pleadings and findings. In the affidavit it is stated in effect that the defendant was the owner of an undivided sixth interest in the Lindstrom tract, and that the said interest was held in trust for him by the plaintiff; and the trust is set up at length in the answer of the guardian *ad litem*. It appeared also from the testimony of several witnesses (including the judge who tried the case) that the plaintiff, when on the witness stand in that case, expressly declared that she held the interest in trust for the defendant; and the decree—which allotted to her the land subject to his claim—was entered on her consent.

There was no evidence, outside the recital in the deed, of any consideration paid for the deed, other than the expectation of support and care to be received by the defendant; and there was no evidence—other than the declarations of the defendant to the witness Fraser—of any agreement on the part of the plaintiff to that effect. The above is the effect of the material evidence in the case; nor was there any contradiction. The plaintiff herself did not testify in the case, nor was her failure to testify explained.

In determining the effect of this testimony, three points are to be considered, namely: the consideration for the deeds, the

relations of the parties toward each other, and the nature of the transaction generally.

1. The court finds that there was an adequate consideration for the deed, but the finding is not supported by the evidence, and must therefore be disregarded. The statement of the defendant to Fraser that "she [the plaintiff] was going to support him," and that (witness believed) "Mrs. Tam was to pay him seventy-five dollars per month," would, in any case, be very meager evidence of a contract, and in the absence of testimony from the plaintiff (the only living competent witness of the transaction), must be regarded as simply an expression of the defendant's expectations. (Code Civ. Proc., sec. 1963, subd. 6.) Nor is there any agreement on her part contained in the contract accompanying the deed of November 29th, where, if there were such an agreement, it would naturally be expressed. If there was such an agreement, it must have been in writing (Civ. Code, sec.1624, subd. 1), and could be produced. (Code Civ. Proc., sec. 1963, subds. 5, 6.) The claim of the respondent that the killing of plaintiff's husband constituted the consideration cannot be entertained. It does not appear that there was any cause of action on that account in the plaintiff against the defendant; and if there were it was not considered in the transaction, and therefore could not have constituted the consideration.

2. The relationship of brother and sister is not in itself a fiduciary relation, but it is a material circumstance in considering the question whether, in fact, such a relation existed. "Blood relationship short of parent and child creates alone no technical confidential relation, but one may very easily—more easily than without it—be superinduced as a matter of fact; and then, it seems, the ordinary case arises, with its attendant duties in the person occupying the superior position, and the corresponding burden of proof." (Bigelow on Fraud, 365.) The evidence on this point, we think, clearly establishes the fiduciary relation. It is expressly found by the court that by reason of the relation existing between them, the defendant "reposed in plaintiff especial confidence and trust." The plaintiff herself declared to her sister that she would take care of the defendant and of his property, and this declaration was

made at or about the date of the transactions in question or
before.    The testimony of Mrs. Griffith (the sister) to this
effect is confirmed by the failure of the plaintiff to deny it,
or to testify with regard to it—a fact that must be regarded
as one of the controlling factors in the case.    (Code Civ. Proc.,
sec. 1963, subd. 6, cited above.)    Her evidence is confirmed
also by plaintiff's subsequent declaration that she kept and
could produce vouchers to show how she managed his property;
and her admissions in the partition suit that she held the
property upon some trust for him; also by the agreement ac-
companying the deed of November 29th, which was executed
only two days after the deed in controversy; and also by the
declarations of the defendant made to Fraser, the plaintiff's
witness.    It must, therefore, be assumed as a fact in the case
that the relation of trustee and beneficiary, within the defini-
tion of the code, existed between the parties (Civ. Code, sec.
2219), with its attendant consequences, as prescribed in sec-
tion 2235 of the Civil Code, and as long established in equity
jurisprudence.    (Bigelow on Fraud, 261 et seq.; 2 Pomeroy's
Equity Jurisprudence, sec. 956 et seq.; 1 Story's Equity Juris-
prudence, secs. 307 et seq., 311, 321; *Ross v. Conway,* 92 Cal. 632;
*Butler v. Hyland,* 89 Cal. 575, 581; *Brison v. Brison,* 75 Cal.
528[1]; *White v. Warren,* 120 Cal. 324, 325.)

The case of *Dimond v. Sanderson,* 103 Cal. 97, commented
upon in the case last cited, was decided on the peculiar features
of the case presented.    It is equally emphatic, however, in as-
serting the general principle, with relation to cases where there
is no consideration or the transaction is unfair.    It cannot be
construed in any way as trenching upon the familiar principle
long established in the law; which is "that while it is not im-
possible that a gift between persons in such relations may be
valid, yet that all such transactions are constructively fraudu-
lent, and are only to be upheld upon a showing of special cir-
cumstances" (*Brison v. Brison, supra*); or, as expressed  by
Pomeroy (2 Pomeroy's Equity Jurisprudence, sec. 956 et seq.),
that "in every transaction between them by which the superior
party obtains a possible benefit, equity raises a presumption
against its validity and casts upon that party the burden of

[1] 7 Am. St. Rep. 189.

proving affirmatively its compliance with equitable requisites and of thereby overcoming the presumption"; which is but the rule prescribed by the Civil Code, section 2235. In this case there was no evidence showing or tending to show that the influence of the plaintiff over the defendant was not used to obtain the deed; and, in view of the nature of the transaction as disclosed by the evidence, the finding of the court to that effect must be regarded as unsupported by the evidence.

3. The conclusion thus reached by applying to the case the presumptions arising from the peculiar relations of the parties is confirmed by the evidence, which, independently of such presumptions, would lead us to the same conclusion. There was no consideration, or at least no adequate consideration, for the deeds, and from this alone the presumption of undue influence arises. The case is one of that class of bargains that are said to be "of such an unconscionable nature and of such gross inequality as naturally lead to the presumption of fraud, imposition, or undue influence; .... such bargains as no man in his senses, and not under delusion, would make on the one hand, and as no honest and fair man would accept on the other, being inequitable and unconscionable bargains." (1 Story's Equity Jurisprudence, sec. 244 et seq.) It does not follow, nor do we mean to assert, that there was originally any actual fraud or fraudulent design on the part of the plaintiff. It is more probable, and may indeed be regarded as established in the case, that she took the conveyances with the motives expressed by her to her sister—namely, to take care of her brother's property for him; and that she continued in good faith to regard herself as his trustee until some time subsequent to the partition suit. But the transaction was none the less constructively fraudulent, for the defendant was induced to part with his property for a consideration that was apparent only, consisting in an agreement that could not be enforced.

Under this view of the case it becomes unnecessary to consider the effect of the judgment in the partition suit as a technical estoppel.

The finding with reference to the statute of limitations cannot be sustained. The case is not one of a merely constructive trust, but there was a trust "voluntarily assumed, and which,

by the understanding of the parties to it, was to be a continuing one. The trustee . . . . continued to hold according to the understanding, and never repudiated the relation"—at least until after the judgment in the partition suit, within four years of the beginning of the action. (*Butler v. Hyland, supra.*) The trust was indeed—as was the case in *Butler v. Hyland, supra*—not evidenced by writing, and was therefore not enforceable as an express trust by legal proceedings; but it existed and was valid so long as it continued to be observed by the trustee, and established between her and the defendant the relation of trustee and *cestui que trust,* within the meaning of the rule that the statute does not run until the repudiation of the trust by the trustee. Here there is no evidence of any repudiation of the trust until the service of the demand for a conveyance by the guardian *ad litem* shortly before the commencement of this suit; and indeed it affirmatively appears that about the time of the judgment in the partition case, and within four years of the commencement of the action, she expressly acknowledged the trust relation, at which time the defendant was an incompetent. It is, indeed, found by the court that from the time of the deed the plaintiff asserted title in herself, and it is in fact so alleged in the answer and cross-complaint. But to render a repudiation effectual to set the statute in motion, the knowledge of it must be brought home to the *cestui que trust.* (2 Perry on Trusts, sec. 864.)

The judgment and order appealed from are reversed and the cause remanded for a new trial.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank.