[L. A. No. 3065. In Bank.—September 21, 1912.]

JESSIE W. TAYLOR, Appellant, v. GRACE MORRIS et al., Defendants and Respondents; W. A. SNEDAKER, as Administrator of the Estate of Zerelda S. Wheeler, Deceased, and HELEN O. MORRIS, by Her Guardian *Ad Litem,* Frank M. Kelsey, Interveners and Respondents.

TRUST—STATUTE OF FRAUD—REPUDIATION OF PAROL TRUST.—The statute of frauds is never permitted to become a shield for fraud, and fraud at once arises upon the repudiation by the trustee of any trust, even if that trust rests in parol.

ID.—ACTION TO ESTABLISH CONSTRUCTIVE TRUST IN LAND—STIPULATION AS TO LEGAL TITLE.—In an action to quiet title to land, which the defendants claimed was held by the plaintiff subject to a constructive trust in their favor, a stipulation merely to the effect that the land had been conveyed to the plaintiff by certain deeds affects the legal title alone, and does not preclude evidence establishing the trust.

Id.—Creation of Trust After Conveyance—Declarations Showing Existence of Trust.—While a constructive trust cannot be created by a naked promise of the grantee after conveyance made to him, still his declarations showing the existence of a trust at the time he accepted the conveyance, afford strong evidence against him in the establishment of the trust.

Id.—Tracing Trust Funds into Specific Property.—Generally speaking, to charge a constructive or resulting trust upon any specific piece of property it must be shown that trust funds went to the purchase of the property.

Id.—Commingling Trust Funds—Subsequent Purchase Treated by Trustee as Trust Investment—Variance Between Pleadings and Proof.—A trustee who commingles the trust funds with money of her own and thereafter treats a particular piece of land purchased in her own name as representing an investment of the specific trust funds, will not be allowed, in an action to establish the trust in the land so purchased, to repudiate her representations, by showing that the precise trust funds did not go into the purchase, and upon such repudiation contend for a variance between the allegation and the proof.

Id.—Immaterial Variance.—In such an action, there is no material variation between an allegation that on a particular date the plaintiff was furnished by her mother with a specified sum of money to purchase and with which she purchased a certain piece of land, and proof that at that time the plaintiff had such amount of her mother's money in her possession, and her declarations in writing that she applied it to the purchase of the land.

Id.—Statute of Limitations—Repudiation of Trust—Knowledge of Beneficiaries.—The statute of limitations does not commence to run in favor of a trustee holding the legal title to land under a positive voluntary trust resting in parol, until a repudiation of the trust by the trustee, with knowledge of the repudiation brought home to the beneficiaries.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. W. R. Hervey, Judge.

The facts are stated in the opinion of the court.

J. W. Swanwick, and Taylor O. Taylor, for Appellant.

Andrew Park, Gray, Barker, Bowen, Allen, Van Dyke, & Jutten, and Flint, Gray & Barker, for Respondents.

HENSHAW, J.—The heirs at law of Zerelda S. Wheeler, deceased, are her daughters, Jessie W. Taylor and Helen O. Morris, both married women. At the time of and some time prior to the institution of this action, Helen O. Morris was and had been an incompetent person. Frank M. Kelsey was appointed her guardian *ad litem*. Upon the death of Zerelda S. Wheeler, testate, Jessie W. Taylor was appointed administratrix with the will annexed of her mother's estate. Thereafter she instituted this action against Grace, Cleda, and Ethel Morris, daughters of her incompetent sister Helen, to quiet title to three separate pieces of property situated in the county of Los Angeles. The administrator of the estate of Zerelda S. Wheeler, deceased (Jessie Taylor having been relieved from her administrative duties), and the guardian *ad litem* of Helen O. Morris, incompetent, were permitted to intervene, and by intervention asserted an interest in the property growing out of trust relations theretofore existing between Jessie W. Taylor and her mother. In brief, the averments of the intervention are that Zerelda S. Wheeler in her lifetime gave to her daughter Jessie in trust eight thousand dollars, which the daughter used in purchasing the properties to settle title to which the action was brought. In particular it is alleged that a certain piece of property, known as "The Flats on Flower Street," was purchased by Jessie W. Taylor for twelve thousand dollars, eight thousand dollars of which was trust money of the mother, and four thousand dollars of which was Mrs. Taylor's own; that this property had been sold by Mrs. Taylor for twenty-six thousand dollars, sixteen thousand dollars of which under the trust belonged to Mrs. Wheeler in her lifetime and to her estate after her death, and that with accrued interest upon this sum there was thus due to the estate of Mrs. Wheeler the sum of twenty-two thousand dollars. The answer to this complaint by Mrs. Taylor was a denial of the receipt of the trust funds or of any trust relationship, and the plea of the statute of limitations. The court found in favor of plaintiff's title to two of the pieces of property in controversy. As to the third the court found that the mother did advance to her daughter, Mrs. Taylor, eight thousand dollars for the purpose "of purchasing a piece of property situate in the city of Los Angeles, being the same piece of property described in the complaint, which said prop-

erty was known to the mother and daughter as the flats on Flower Street." Further, the court found "that it was then and there orally agreed between said mother and daughter that the said mother should contribute said $8,000 in money and the daughter $4,000 in money, and that with the said aggregate amount of $12,000 that said daughter should purchase said property last described, taking the title thereto in the name of said daughter and holding the same in trust for her said mother to the extent of two-thirds thereof. In pursuance of said agreement and arrangement the said Jessie W. Taylor did then and there, on or about the 7th day of February 1902, purchase said property and took the title thereof in her own name, paying therefor with the money thus contributed, $8,000 in money belonging to her said mother and $4,000 in money of said daughter."·

It was made to appear and so found that in March, 1894, the mother conveyed to the plaintiff a piece of property in trust for herself, which piece of property was known as the Highland Villa. This Mrs. Taylor subsequently sold, receiving therefor one thousand dollars in cash and seven thousand dollars in a note secured by a mortgage. This mortgage note she sold and assigned to the Southern California Savings Bank for its face value. Still further the court found: "On February 7, 1902, the flats were conveyed to plaintiff and she paid therefor $12,000 in cash. No part of the money which plaintiff received from the savings bank upon the assignment of said mortgage, was used in the purchase of the flats; but the court finds that the plaintiff considered and treated two-thirds of the money which she paid for the flats as the proceeds of the Highland Villa, and as the property of her mother; and considered and treated the flats as belonging, one-third to herself and two-thirds to her mother; and the court finds that plaintiff held two-thirds of said property in trust for her mother." The further findings compute the amount of the trust fund in the hands of the plaintiff to be $20,305.90, and declare against the plea of the statute of limitations. Judgment was given for the interveners accordingly.

The evidence to establish the trust is ample and convincing. Mrs. Wheeler in December, 1902, drew her holographic will which was admitted to probate. That will contained the fol-

lowing: "Mrs. Parke (now plaintiff, Mrs. Jessie W. Taylor)
and I paid twelve thousand dollars for the flats on Flower
Street; I paid eight thousand and she paid four thousand
dollars.   I want Jessie Parke to have one-half and Mrs. Helen
Morris to have the other half."   The testimony is that upon
the reading of this will Mrs. Taylor acquiesced in the state-
ments above quoted and pronounced them correct.   Mrs.
Taylor's letters to her sister are strongly confirmatory of this.
Thus, four years after her mother had conveyed to her the
Villa property, she writes to her sister Helen: "Don't worry
about what will happen in five years.   Mama, in all proba-
bility, will not be living, and you will have one-half of the
Villa to live on or to do business with.   In the mean time I will
take care of her as best I can like I always have.   ·I would
sell the Villa this winter if I could and pay off the debt on
it and put the money on interest or buy something that I
could rent so she can support herself."   In April, 1902, about
three months after the sale of the Villa, and about two months
after the purchase of the flats on Flower Street she wrote
to her sister as follows: "I have sold the Villa for $10,000,
paid the mortgage, principal and interest, and after settling
up everything I had $8,000 left.   Don't you think I did well.
I had to repair the roof and paint the front and steps and
had a lot of small repairs inside and paid the spring taxes.
Well, I went right straight and got another place with it.
I took mother's $8,000 and put $4,000 of my money with it
and bought some very fine flats on Flower Street between 9th
and 10th streets, the whole costing me $12,000.   The lot is
50 by 150 feet to a 20 foot alley.   It is a very good piece of
property and I wouldn't think of selling it for less than
$15,000.   I long so much to talk to you and if I can sell the
flats for $15,000.00 Ma will have $10,000 clear and I will
have $5,000.   They are for sale.   I am trying to make all
the money I can so you can have something when you are
old."   Mrs. Taylor's explanation of these letters is that her
sister was having trouble with her husband and was fearful
that her husband would leave her, and that she wrote these
letters at her sister's request, that they might be shown to the
husband and convey to him the idea that she would soon have
property of her own.   But of course the court was not bound
to accept this explanation, and it is well recognized as mat-

ter of law, as well as of plain common sense, that an account of a transaction given in a contemporaneous writing when no differences have arisen, is to be preferred to a subsequent oral explanation at variance with the writing, given after differences have arisen.

Appellant contends that the evidence entirely fails to establish that she held the Villa property in trust and that, failing to establish this, the whole foundation for the asserted trust in the Flower Street flats is destroyed. It is conceded, as it must be, that there is evidence to establish that plaintiff was trustee for her mother of the Villa property, but it is asserted that the deeds by which her mother conveyed title to her were absolute in form; that the stipulation of the parties in this action acknowledges her absolute title and that, therefore, the evidence to establish the trust in contradiction of the deed and of the stipulation was inadmissible. To this proposition the familiar sections of the code and the familiar decisions under them, forbidding the attempt to vary the language of written contracts by parol are cited. But appellant mistakes the scope of the rule. The statute of frauds is never permitted to become a shield for fraud, and fraud at once arises upon the repudiation by the trustee of any trust, even if that trust rests in parol. When it rests in parol, either parol evidence must be received to establish the trust, or the faithless trustee will always prevail. Certainly no elaboration of so plain a proposition is necessary, and it should be sufficient to refer to such cases as *Butler* v. *Hyland,* 89 Cal. 575, [26 Pac. 1108]; *Hayne* v. *Hermann,* 97 Cal. 261, [32 Pac. 171]; *Odell* v. *Moss,* 130 Cal. 352, [62 Pac. 555]; *Becker* v. *Schwerdle,* 141 Cal. 391, [74 Pac. 1029]; *Fanning* v. *Green,* 156 Cal. 279, [104 Pac. 308]; *Cooney* v. *Glynn,* 157 Cal. 589, [108 Pac. 506]; *Lauricella* v. *Lauricella,* 161 Cal. 61, [118 Pac. 430].

The stipulation upon which appellant relies does no more than to declare that it is stipulated "the property called The Villa or The Highland Villa . . . was conveyed to her by her mother by grant deed March 28, 1894, sixteen years ago, and also by a second grant deed made four years later in 1898, and it stood in plaintiff's name until she sold it." There is nothing in this stipulation to prevent defendants and interveners from establishing the trust. It is a stipulation affect-

ing the legal title alone, and it is useless to contend that by such a stipulation the defendants and interveners designed to waive their contention of the existence of a trust which lay at the very foundation of their claim.

To the objection of appellant that the evidence does not establish the existence of a trust, and does no more than to show certain naked promises made by the plaintiff after the transaction, it is to be noted that the evidence here adverted to is precisely of the same nature as that discussed in *Fanning* v. *Green,* 156 Cal. 279, [104 Pac. 308], and *Cooney* v. *Glynn,* 157 Cal. 589, [108 Pac. 506]. The statements of Mrs. Taylor were not promises. They were admissions and acknowledgments of a trust relationship resting in parol, which trust relationship was created and existed contemporaneously with the acquisition by her of the Villa property and the purchase by her of the Flower Street flats. So, while it is true, that a constructive trust cannot be created by a naked promise of the grantee after conveyance made to him, it is equally true that his declarations showing the existence of a trust at the time he accepted the conveyance, afford strong · evidence against him in the establishment of the trust.

Appellant contends that there is a fatal variance between the allegation and the proof; that the allegation (above quoted) is the furnishing by Zerelda S. Wheeler in February, 1902, of eight thousand dollars for the purpose of purchasing the flats on Flower Street; that the proof fails to establish the furnishing by Zerelda S. Wheeler of this or any money at that time; still further that the evidence fails to establish the trust in the Villa property; that the finding is specific that the proceeds of the Villa property, even if there was a trust therein, were not invested in the Flower Street flats, and that for this variance and this failure of proof the cause must be reversed. We have before said that the evidence to establish the trust in the Villa property is sufficient so to do. The findings of the court amount to this: That at the time plaintiff purchased the Flower Street flats she was chargeable with the possession of eight thousand dollars trust funds of her mother; that this identical ear-marked trust fund was not invested in the Flower Street flats, but that of the twelve thousand dollars paid by plaintiff for the purchase of those flats, she herself contemporaneously with the transaction

treated eight thousand dollars of it as being and representing
the trust fund of her mother; that defendants and interveners
have accepted this, and their acceptance binds the plaintiff.
This we say is the substance of the court's findings. These
findings are unquestionably supported by the evidence. Gen-
erally speaking it is of course true that to charge a construc-
tive or resulting trust upon any specific piece of property
it must be shown that trust funds went to the purchase of
the property. Here the proof that the trust funds so went
into the purchase of the property is largely established by
the declarations and admissions of the trustee herself. The
question is, shall she be allowed to repudiate these declara-
tions by showing that the precise trust funds did not go
into the purchase, and upon this repudiation contend for a
variance between the allegation and proof, or shall it be said
that under such admissions and declarations of a trustee it
will be held, against an attempt to make a counter showing,
that the trustee, who had commingled the trust funds, herself
treated the investment as an investment of the specific trust
funds, and will be bound accordingly? No doubt can be en-
tertained but that the latter, which was the conclusion of the
trial court, is the only one which equity will countenance.

Moreover it is not every variance which will necessitate the
overthrow of a judgment. (Code Civ. Proc., sec. 469.) The
allegation in this instance is that Mrs. Wheeler, in February,
1902, furnished her daughter with eight thousand dollars
trust funds to purchase, and with which she purchased a two-
thirds interest in the Flower Street flats. The proof estab-
lished the possession by the daughter at that time of eight
thousand dollars of the mother's money and her declarations
in writing that she applied that money to the purchase of the
Flower Street flats, and that because of this application her
mother was the equitable owner of two-thirds of the prop-
erty. There is as between this allegation and these proofs
no variance which could have misled or injured the plaintiff.

The plea of the statute of limitations was not sustained.
Appellant argues that respondents rely upon an implied trust
arising by operation of law; that the statute of limitations
runs against the right to charge upon such an implied trust
from the date the right arises, and that the action is there-
fore barred by section 343 of the Code of Civil Procedure.

(See *Hecht* v. *Slaney,* 72 Cal. 366, [14 Pac. 88] ; *Nougues* v. *Newlands,* 118 Cal. 104, [50 Pac. 386] ; *Broder* v. *Conklin,* 121 Cal. 288, [53 Pac. 699].)    The difficulty with appellant's contention is that the claim against her does not arise under an implied trust but under a positive, voluntary trust resting in parol, and it is of course well settled that the statute of limitations does not run against such a trust until repudiation of it by the trustee, with knowledge of this repudiation brought home to the beneficiaries.    Only after this repudiation and knowledge does the four years statute of limitation apply.    (*Odell* v. *Moss,* 130 Cal. 352, [62 Pac. 555] ; *Norton* v. *Bassett,* 154 Cal. 415, [129 Am. St. Rep. 162, 97 Pac. 894].) As late as December, 1906, plaintiff had written to her sister acknowledging the trust and her trusteeship.    As appears by the evidence, the first act amounting to a repudiation and disaffirmance of her trust was the filing by her of an inventory of her mother's estate, by which inventory no interest of the estate in the property and no indebtedness to the estate from the plaintiff was shown.

No showing is here made to justify appellant's contention that she should have a judgment for costs.

Her other contentions all revolve about the propositions which have heretofore been discussed.    They do not therefore require specific consideration.

For the reasons given the judgment and order appealed from are affirmed.

Melvin, J., Angellotti, J., and Shaw, J., concurred.

Rehearing denied.