[Civ. No. 5477. First Appellate District, Division One.—July 29, 1926.]

## JOHN R. COLE, Respondent, v. EFFIE T. MANNING, Appellant.

[1] APPEAL—TESTIMONY OF PLAINTIFF—EVIDENCE—FINDINGS—INFERENCES.—If plaintiff's testimony be accepted as true by the trial court, it is sufficient on appeal to sustain findings for him, although there is evidence warranting a contrary inference.

[2] ID. — FINDINGS — CONFLICTING EVIDENCE. — Findings of the trial court on conflicting evidence are controlling on appeal.

[3] ID. — PLAINTIFF AS WITNESS — WEIGHT AND CREDIBILITY OF EVIDENCE—QUESTION OF LAW.—The weight of plaintiff's testimony and his credibility as a witness are exclusively within the province of the trial court to determine.

[4] TRUSTS—CANCELLATION OF DEEDS — RECONVEYANCE — CONFLICTING EVIDENCE—APPEAL.—A decree adjudging plaintiff to be the owner of land and ordering cancellation of deeds and reconveyance thereof must be affirmed, where the record discloses conflict in the evidence as to whether the grantee promised to hold the property in trust, or the transfer was made to defraud creditors and for a certain monetary consideration.

[5] CONTRACTS — PUBLIC POLICY — CONTRACTS VIOLATING MORALITY.—Any contract violating morality or public policy is illegal and cannot be sued on, whether executed or executory.

[6] APPEAL—ACTION TO CANCEL DEEDS — RECONVEYANCE — RELATIONS BETWEEN GRANTOR AND GRANTEE—JUDGMENT-ROLL.—In an action by a man against a woman to cancel certain deeds and to compel reconveyance by her, where neither the pleadings nor the findings reveal any meretricious relations between them, the case must be treated on appeal as if no such relations existed, so far as the judgment-roll is concerned.

[7] TRUSTS—ACTION TO CANCEL DEEDS AND COMPEL RECONVEYANCE—RELATIONS BETWEEN GRANTOR AND GRANTEE — FINDINGS — PLEADING.—In an action by a man against a woman to cancel certain deeds and to compel reconveyance by her, the findings and judgment of the trial court were sufficient in form and substance to sustain an enforceable trust in defendant, in the absence of any intimation of meretricious relations between the parties in the pleadings or findings.

2.  See 2 Cal. Jur. 921; 2 R. C. L. 204.
3.  See 27 Cal. Jur. 182; 25 Cal. Jur. 168.
5.  See 6 Cal. Jur. 168; 6 R. C. L. 716.

[8] Id. — Trust by Operation of Law — Confidential Relations — Conveyance upon Parol Promise — Breach — Fraud. — Where confidential relations exist between two parties, and one conveys land to the other upon a parol promise that he will hold it for the benefit of the grantor or of a third person in whom the grantor is interested, there being no other consideration for the conveyance, a trust arises in favor of the person for whose benefit the property is held, and it is the violation of the parol promise which constitutes the fraud upon which the trust arises.

[9] Id. — Laches — Evidence — Findings. — A cause of action for cancellation of deeds from a man to a woman in consideration of a promise to marry is not barred by laches and by the provisions of subdivision 4 of section 338 of the Code of Civil Procedure, where it appears from the evidence and the findings that the trust was not repudiated until plaintiff discovered, a few months prior to the commencement of the action, that defendant was married.

[10] Id. — Statute of Limitations — Repudiation of Trust — Knowledge of Beneficiary. — The statute of limitations does not commence to run in favor of a trustee holding the legal title to land under a voluntary trust resting in parol, until after the repudiation of the trust with knowledge of the repudiation brought home to the beneficiary.

[11] Judgments — Property Out of State — Title — Jurisdiction. — While neither a decree nor any conveyance of real property under it, except by the party in whom title is vested, is of any efficacy beyond the jurisdiction of the court, and will not operate to change or directly affect the title to property in another state, nevertheless it is within the power of the court rendering the decree to direct a conveyance to be made by the defendant, or, in the event defendant fails to do so, that the clerk of the court make conveyance; and the fact that an alternative direction to the clerk of the court to execute the deed was made a part of the decree does not render the decree or that portion of it void, but, if executed, such deed will have no efficacy beyond the territorial limits of the court's jurisdiction.

---

(1) 4 C. J., p. 886, n. 46. (2) 4 C. J., p. 883, n. 33. (3) 4 C. J., p. 844, n. 66, p. 879, n. 88, p. 885, n. 39; 38 Cyc., p. 1516, n. 57, p. 1518, n. 69. (4) 4 C. J., p. 900, n. 98. (5) 13 C. J., p. 493, n. 18, p. 495, n. 20. (6) 4 C. J., p. 656, n. 32. (7) 39 Cyc., p. 182, n. 66, p. 637, n. 48. (8) 39 Cyc., p. 179, n. 51. (9, 10) 37 C. J., p. 911, n. 73; 39 Cyc., p. 604, n. 43, 44, p. 608, n. 69. (11) 15 C. J., p. 796, n. 40, p. 797, n. 42, p. 818, n. 73.

8. See 25 Cal. Jur. 159; 26 R. C. L. 1238.
10. See 25 Cal. Jur. 271.

APPEAL from a judgment of the Superior Court of Sonoma County. R. L. Thompson, Judge. Affirmed.

The facts are stated in the opinion of the court.

Wallace L. Ware for Appellant.

W. F. Cowan and A. W. Hollingsworth for Respondent.

KNIGHT, J.—The plaintiff John R. Cole obtained a decree herein against the defendant Effie T. Manning adjudging him to be the owner of an undivided one-half interest in a ranch in Sonoma County, California, and sole owner of two parcels of land situate in the state of Idaho. Said decree furthermore ordered the cancellation of certain deeds theretofore executed by plaintiff to defendant conveying to the latter said Idaho property, and directed defendant to execute and deliver to plaintiff instruments of conveyance to all property of which he was by said decree declared to be the owner, or in the event of defendant's failure so to do, that the clerk of the court execute and deliver the same. It was further adjudged that plaintiff was entitled to his share of the income from said properties subsequent to the entry of said decree. Defendant appeals and as first ground for reversal urges that the evidence is insufficient to support the findings.

It appears from the evidence that during the year 1910 plaintiff, an unmarried man, residing in Inchelium, Washington, began corresponding with defendant through the medium of an advertisement inserted in a Los Angeles matrimonial publication by defendant at the request °of her sister Mrs. Taylor, with whom defendant was then living near Los Angeles. About six months later, in October, 1910, defendant went to Washington for the purpose of meeting plaintiff, the latter having sent her $50 to defray traveling expenses. Upon her arrival there the parties were not married, but began and for three months thereafter continued an illicit cohabitation, at the end of which period defendant returned to her home near Los Angeles. About a month later, in February, 1911, plaintiff went to Los Angeles, where he resumed the cohabitation with defendant while she was living at her sister's

home, the defendant having advanced plaintiff $50 for traveling expenses. They continued to live in that relationship near Los Angeles until May 7, 1911, and during that time, to wit, on February 25, 1911, plaintiff conveyed to defendant his interest in the Idaho property, valued at about $6,500, and assigned to her a contract for the sale of land in Canada, calling for the payment to him of a balance of $600. He also made a bill of sale transferring to her title to personal property worth about $500. During the early part of May, 1911, they moved to San Francisco, where they entered into an installment agreement for the purchase of the Sonoma County ranch for the sum of $2,550, Mrs. Manning making an initial payment thereon of $250. Cole and Mrs. Manning took possession of the property about May 11, 1911, and Cole immediately began building a house thereon, into which they moved as soon as it was completed, and occupied until the year 1922, representing themselves to be brother and sister, but in fact maintaining a meretricious relationship. During these years the place was cultivated, fenced, and set out to orchard. Cole constructed a barn, windmill, and other improvements thereon, and also worked for various employers in the vicinity, earning approximately $2,658, which was turned over to Mrs. Manning and by her applied to the payment of the purchase price and the improvement of the ranch. Besides his earnings, Cole turned over to Mrs. Manning various sums which he received on a life insurance policy, from loans, sales of land in Canada and other sources, which sums were also put into the property. Mrs. Manning contributed toward the purchase price and improvements a sum not exceeding $2,500. In 1913 the installment contract was extinguished and the property was deeded to Mrs. Manning as sole grantee, subject to a mortgage of $2,000. In 1920 the ranch was leased and the equipment thereon sold to a tenant for the aggregate sum of $3,590, or thereabouts, and this money was used to discharge the mortgage, amounting to $2,110.83, including interest. In October, 1922, Mrs. Manning, upon Cole's application, was committed to the state hospital for the insane, but was shortly afterward released on parole, given into the custody of relatives and subsequently legally restored to competency.

At the time plaintiff conveyed the Idaho property to Mrs. Manning he owned only a half interest therein, his brother owning the remaining interest, but the property was subsequently partitioned and title to the separate share plaintiff was entitled to was conveyed to Mrs. Manning. This property brought in a rental of between $15 and $25 a month, and the Sonoma ranch at the time of the trial was valued at about $12,000.

Plaintiff's complaint is in one count, his cause of action being based upon an alleged trust relationship. In this respect it was in substance alleged in the complaint and found by the trial court that a relation of confidence and trust existed between plaintiff and defendant arising out of exchange of promises to marry which were made and accepted for the first time during defendant's visit to Washington, and which were afterward renewed from time to time during the following years; that relying upon said promises of marriage plaintiff, at the solicitation of defendant, was induced to convey to defendant said Idaho property, to contribute toward the purchase price and the improvement of the Sonoma County ranch, and to allow title thereto to be taken in defendant's name with the understanding and agreement, and pursuant to representations made by defendant to the effect that she would hold the same in trust for the use and benefit of plaintiff and herself until the marriage was consummated, and that in the meantime she would preserve and protect the property so that when married they might enjoy the ownership of the same as husband and wife; that shortly before the commencement of this suit plaintiff learned that defendant was not a single person and therefore had no intention of fulfilling her repeated promises to marry; that upon learning of her marital status he demanded a reconveyance of the Idaho property and the conveyance to him of a half interest in the ranch in Sonoma County, whereupon defendant repudiated her agreements as to her trusteeship, claimed to be the exclusive owner of all of said property, and excluded him from said ranch. Plaintiff then commenced this suit.

Defendant's contention that the findings are not supported by the evidence is based mainly upon the claim that the evidence proved that the transactions involving the

conveyance of the Idaho property and the acquisition of the Sonoma County ranch were consummated principally in consideration of defendant's consent to maintain meretricious relations with plaintiff; that there never was any promise or any intention on the part of either to enter into the marital relation, but that they agreed from the outset not to marry; that, therefore, the parties being *in pari delicto*, the court, in the exercise of its jurisdiction in equity, may not intervene in the settlement of property rights acquired as a result of such relationship, but must leave the parties where it finds them.

[1] Assuming, as defendant contends, that the record reveals evidence from which this inference might be fairly drawn, still the testimony given by plaintiff was wholly to the contrary, and his testimony, having been accepted as true by the trial court, is legally sufficient to sustain the findings on this essential issue. [2] At best, therefore, the proof relied upon by defendant raises but a mere conflict, and in that state of the record the trial court's findings must be held as controlling. [3] Defendant argues strongly against the probability of the truth of plaintiff's testimony, claiming, for instance, among other things, that his explanation as to why the marriage was not consummated during the number of years they were living together, namely, because defendant pretended that she was in ill health, is absurd. But it is apparent that this and like reasons urged by her against the truth of plaintiff's testimony relate entirely to the amount of weight that shall be given to such testimony and to plaintiff's credibility as a witness, and these are questions exclusively within the province of the trial court to determine. The rule to be applied on appeal in a situation of this kind, as it is stated in California Jurisprudence, is as follows: "Assuming that the presumption is, primarily, that the holder of the legal title is also the owner of the beneficial interest in the property, it would seem that the plaintiff must assume the burden of showing by a preponderance of evidence that the transaction was not a gift or sale, or—what is the same thing—that the consideration for the conveyance was the defendant's alleged promise. While this rule may be invoked in the trial court, it is to be borne in mind that the appellate courts assert a

limitation upon their authority to reach conclusions which contradict the findings of the trial court. Hence, if the record discloses a conflict of evidence as to whether the grantee promised to hold the property in trust, the judgment must be affirmed. Within the rule, a conflict of evidence may be produced in some cases by the testimony of the plaintiff.'' (25 Cal. Jur., p. 168, citing cases.) [4] What has been said regarding the conflict of evidence upon the issue already discussed applies with equal force to the further contention of defendant that the transfer of the Idaho property was made by plaintiff for the purpose of defrauding his creditors and also for a certain monetary consideration, for as to those issues the evidence is also conflicting, plaintiff having denied both assertions.

[5] Neither are we able to sustain defendant's contention that the findings and the judgment are against law. Admittedly any contract which violates morality and public policy is illegal and void, and whether it be executed or executory no action can be maintained thereon (6 Cal. Jur. 168; 6 R. C. L. 716; *Vincent* v. *Moriority,* 31 App. Div. 484 [52 N. Y. Supp. 519]); and if in the instant case the findings disclosed that plaintiff's right of recovery was predicated upon transactions of an immoral nature, the validity of the decree could not be maintained; but the decision of the trial court in plaintiff's favor is placed upon an entirely different ground, that is, upon the ground of a trust relationship arising out of promises of marriage.

[6] Neither the pleadings nor the findings reveal any intimation of the existence of meretricious relations between the parties, that element having appeared in the case only through the introduction of evidence; consequently the case, so far as the judgment-roll is concerned, must be treated as if such relations never existed. [7] That being so, the terms of the findings and judgment are, in our opinion, legally sufficient in form and substance to sustain an enforceable trust. ''Where a person takes advantage of a confidential relation which he sustains toward another, or of the confidence reposed in him by another to gain property by fraud, the court will declare a constructive trust.'' (1 Beach on Trusts and Trustees, sec. 105.) ''Whenever two persons stand in such relation that

confidence is naturally reposed by one, and the influence growing out of that fact is possessed by the other, and this confidence is abused or the influence is exerted to obtain an advantage at the expense of the confiding party, the party so availing himself of his position will not be allowed to retain his advantage.'' (Perry on Trusts and Trustees, sec. 209.) **[8]** The law in this state is to the same effect, it being held generally that where confidential relations exist between two parties, and one conveys land to the other upon a parol promise that he will hold it for the benefit of the grantor or of a third person in whom the grantor is interested, there being no other consideration for the conveyance, a trust arises in favor of the person for whose benefit the property is held, and it is the violation of the parol promise which constitutes the fraud upon which the trust arises. (*Cooney* v. *Glynn,* 157 Cal. 583 [108 Pac. 506]; *Lauricella* v. *Lauricella,* 161 Cal. 61 [118 Pac. 430]; *Taylor* v. *Morris,* 163 Cal. 717 [127 Pac. 66].) A number of cases are cited and discussed in the briefs herein as to the rule prevailing in cases where parties have acquired property while cohabiting under a void marriage, but we deem it unnecessary to inquire into the rule of those cases, for we believe that the situation here is governed by the law of trusts as announced in the authorities hereinabove referred to.

**[9, 10]** There is no merit in defendant's contention that plaintiff's cause of action is barred by laches and by the provisions of subdivision 4 of section 338 of the Code of Civil Procedure, for it appears from the evidence and the findings that the trust was not repudiated until plaintiff discovered that defendant was not a single person, which discovery was made only a few months prior to the commencement of the action; and the statute of limitations does not begin to run until after a repudiation of the trust with knowledge of the repudiation brought home to the beneficiary. (*Taylor* v. *Morris, supra.*)

**[11]** Finally, defendant contends that the trial court exceeded its jurisdiction in attempting a disposition of the real property situate in Idaho, and that the portion of the decree authorizing the clerk of the court to execute the deed of conveyance upon the failure of defendant to do so is void, citing, among others, the case of *Fall* v.

*Eastin,* 215 U. S. 1 [17 Ann. Cas. 853, 23 L. R. A. (N. S.) 924, 54 L. Ed. 65, 30 Sup. Ct. Rep. 3]. The effect of the decision in that case was discussed in *Redwood Investment Co.* v. *Exley,* 64 Cal. App. 455 [221 Pac. 973], the court saying in reference thereto: "It was held that while a court of equity acting upon the person of the defendant may decree a conveyance of land in another jurisdiction and enforce the execution of the decree by process against the defendant, neither the decree nor any conveyance under it except by the party in whom title is vested is of any efficacy beyond the jurisdiction of the court; that to concede such power would be to attribute to such a decree the force and effect of a judgment *in rem* by a court having no jurisdiction of the *res.* It was there further held that the full faith and credit clause of the constitution does not extend the jurisdiction of the courts of one state to property situated in another, but only makes the judgment conclusive on the merits of the claim, or subject matter of the suit; and the courts of the state in such a case do not deny full faith and credit to a decree of courts of another state by holding that it does not operate directly upon and transfer the property." And then, after pointing out that the rule stated in *Taylor* v. *Taylor,* 192 Cal. 71 [218 Pac. 756], is to the same effect, the court continued: "There can be no question that real property is exclusively subject to the laws and jurisdiction of the state where located, and that no other laws or courts can affect it by an attempt to create, transfer or vest title thereto. Judgments or decrees, therefore, which are rendered in one state cannot of themselves affect title to lands in another. From the very nature of the property land must be governed by the *lex loci rei sitae.* But this does not mean that a decree directing a conveyance is without its effect *per se.* It may be pleaded as a basis or cause of action or defense in the courts of the state where the land is situated, and is entitled in such a court to the force and effect of record evidence of the equities therein determined unless it be impeached for fraud. (2 Black on Judgments, sec. 872; *Burnley* v. *Stevenson,* 24 Ohio St. 474 [15 Am. Rep. 621].)"

It would therefore appear in the instant case that while "neither the decree nor any conveyance under it except

by the party in whom title is vested is of any efficacy beyond the jurisdiction of the court,'' and will not operate to change or directly affect the title to property in another state, nevertheless it was within the power of the court to direct a conveyance to be made by the defendant and for that purpose it became necessary to first adjudicate ownership. The fact that an alternative direction to the clerk of the court to execute the deed was made a part of the decree does not, in our opinion, so far as this appeal is concerned, render the decree or that portion of it void, but, as held in *Fall* v. *Eastin, supra,* if executed, such deed will have no efficacy beyond the territorial limits of the court's jurisdiction.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 27, 1926.