[Civ. No. 6277. First Appellate District, Division One.—December 28, 1928.]

CHARLES H. DALBKERMEYER, Appellant, v. LULU Z. RADER, Respondent.

Woodruff & Shoemaker and Clyde C. Shoemaker for Appellant.

C. F. Cable and Lester R. Godward for Respondent.

KNIGHT, J.—Plaintiff brought suit to quiet title to certain real property which had been conveyed to and stood of record in the names of plaintiff and defendant as joint tenants, and subsequently he amended his complaint by adding a second cause of action thereto whereby he sought to impress the property with a constructive trust and to compel a conveyance of defendant's title therein to him.

Judgment was rendered in favor of defendant and plaintiff appeals.

Plaintiff does not question the trial court's decision relating to the first cause of action, but as to the second he contends in substance that the trial court's affirmative findings upon certain probative facts alleged therein are sufficient to establish a constructive trust, and that, therefore, the decision with respect to the second cause of action is not supported by the findings and is contrary to law.

The main facts disclosed by the record are as follows: In November, 1914, plaintiff, being then fifty-eight years of age, was living alone in Los Angeles, having been estranged from his wife for a number of years, although not divorced. He was the owner of property of the value of $45,000 or $50,000, and was engaged in a number of business enterprises, among them being the operation of the Santa Barbara Apartments in Los Angeles. Defendant, who was thirty-five years of age, had been married but was living separate from her husband, and was dependent upon her labor for a livelihood. She applied for work at plaintiff's apartment house, which was at first refused; but after informing plaintiff of her necessitous condition and that she was much in need of a home, plaintiff agreed that if she would make herself generally useful about the apartment house by keeping the premises clean and orderly, and would cook and keep house for him, he would give her board and room, furnish her necessary clothing, medical aid when required, and some spending money. Defendant accepted the proposition and, during the five years following, her services were not only satisfactory but of much value to plaintiff, for during that period he disposed of the Santa Barbara Apartments and afterwards acquired, operated, and disposed of two other apartment houses, namely, the Euclid and the Grace Apartments, all to his financial gain.

After selling the Grace Apartments in 1919 plaintiff decided to discontinue the apartment house business and at that time, because of the long period of defendant's faithful services to him, and of the trust and confidence each had in the other, plaintiff informed defendant that if she would continue to stay with him during his lifetime and care for him as his housekeeper and look after his welfare under the same general arrangement as theretofore existing, he would buy a piece of property and cause the

same to be conveyed to them as joint tenants with the right of survivorship, so that in case of his death she would become the sole owner of the property. Defendant agreed, and pursuant to such agreement plaintiff purchased a piece of property on North Benton Way, Los Angeles, and caused title thereto to be conveyed to himself and defendant as joint tenants. The entire consideration therefor was furnished by plaintiff, and after the deed had been recorded it remained in plaintiff's possession.

In February, 1920, plaintiff sold said property, defendant, at plaintiff's request, having joined in the deed; and thereafter, in January, 1921, plaintiff purchased a second piece of property on Sixty-fourth Street, Los Angeles, and likewise caused the same to be conveyed to himself and defendant in joint tenancy, upon the same understanding and for the same purposes as in the case of the purchase of the Benton Way property. Part of the purchase price for the second piece of property consisted of a payment of $275 in cash, which amount was drawn by plaintiff from a joint bank account opened by him in June, 1920, in the names of himself and defendant, as part of the same arrangement, so he claims, under which the real property was acquired. With respect to this latter property the trial court found that "at the time of such purchase the plaintiff informed the defendant that the property last mentioned was neither as desirable nor as valuable as the said property on Benton way, and that he expected to dispose of it in a short time, but in the meantime, and while acquiring some other property, he would cause defendant's name to be placed on the deed of purchase with that of plaintiff, as joint tenants, with the same understanding as aforesaid, all of which was understood and consented to by defendant." As will hereinafter appear, the parties continued to hold the property last mentioned until February, 1924, at which time it was sold and the proceeds deposited in said joint bank account.

In the meantime, however, to wit, in August, 1921, plaintiff purchased the property in question, situate on Vermont Avenue, Los Angeles; and with reference thereto the court found as follows: That "plaintiff and defendant having confidence in each other, plaintiff caused the deed to said described property last mentioned to be taken in the names of the plaintiff and defendant as joint tenants, in accordance with and upon the same agrement" as theretofore existed

between them; and, furthermore, that "in the matter of the purchase of said real property and in the matter of the taking of the title thereto and the placing of the name of the defendant as a joint tenant on the deed of purchase as hereinbefore alleged, each of said parties believed in the honesty and good faith of the other and relied upon their agreements as aforesaid; and that during all of said times a confidential relationship existed between the plaintiff and the defendant." The purchase price for the property was approximately $16,000, which was paid as follows: Execution and delivery of a joint note and mortgage for $5,000, signed by plaintiff and defendant, allowances for rebates, credits, in the sum of $160, and the delivery of six checks aggregating $10,864 drawn by plaintiff on said joint bank account. The money deposited in said joint bank account to meet the payment of said checks was the proceeds from the sale of certain real and personal property separately owned by plaintiff and not here involved. As stated, in February, 1924, plaintiff and defendant disposed of the property at Sixty-fourth Street, and about this time, or soon thereafter, a disagreement arose between the parties, and approximately two months after such sale, and on May 7, 1924, defendant, for just cause as she claims, left the premises where she was residing with plaintiff and refused to return.

With reference to the Vermont Avenue property, plaintiff alleged in his complaint, that it was agreed "that defendant would not claim any ownership in said property prior to plaintiff's death; and that at all times it was understood between the plaintiff and the defendant that while plaintiff lived said described property should be owned absolutely by plaintiff"; also, that "the plaintiff did not intend to make any gift of said property or any part thereof to the defendant, or to vest the ownership of said property or any part thereof in the defendant." But the court found that said allegations were not true and, on the other hand, found that, although it was understood that plaintiff should have the right to control and manage such property and that plaintiff did actually manage and control same during all times since its purchase, the legal title to said property became vested in the plaintiff and defendant as joint tenants, with the right of survivorship at the time the same was purchased, to wit, on or about August 12, 1921; furthermore, the court found "that the defendant asserts and claims that

she was and is the owner of a joint tenancy estate in said real property with the plaintiff and that it is not true that such assertion and claim by defendant was or is wrongful, fraudulent, or inequitable or contrary to the intention of the parties, and that it is not true that the defendant has no interest or estate whatever in or to said described property or any part thereof. . . . "

Plaintiff also alleged that the departure of defendant on May 7, 1924, was wrongful and "in violation of the trusts and confidences imposed in her by the plaintiff, as aforesaid, and contrary to and in violation of her promises and agreements. . . . " The trial court made no finding as to whether or not such departure was wrongful, but found that "the defendant deliberately left the plaintiff and departed from the premises where the plaintiff and defendant had theretofore resided, and packed her belongings and removed them from the premises, and thereafter failed and refused to return or in any manner thereafter to carry out or perform any of her said promises to act as plaintiff's housekeeper or to care for him or to look after his welfare; . . . that while it is true that defendant has violated her promises and agreements as hereinbefore found, it is not true that defendant is wrongfully and fraudulently endeavoring to gain an unconscionable advantage over plaintiff by virtue of said deed."

We are convinced that the foregoing facts and circumstances, and others incidental thereto which are unnecessary to set forth herein, were, as the trial court held, legally insufficient to establish a constructive trust, and that, therefore, plaintiff was entitled to take nothing by his action. Nowhere in the complaint is it alleged, nor does the court find nor the evidence prove, that defendant obtained the joint tenancy estates in the various properties through any misrepresentation, imposition, circumvention, abuse of confidential relations, or any other kind of actual or constructive fraud. Admittedly throughout the ten years of their acquaintanceship, and particularly during the latter five years thereof—while they were acquiring said properties in joint tenancy—plaintiff's was the dominating mind, and the status of the properties and of the parties resulted alone from his affirmative, voluntary acts. Nor is there any proof whatever from which the inference could be drawn that defendant's agreement was made without intention of per-

forming the same or that it was terminated other than for good cause. On the other hand, the findings and the evidence affirmatively show that the various conveyances to defendant as a joint tenant were absolute in form, and were all based upon a valuable consideration, namely, the performance of future personal services, and that thereafter said services were faithfully performed for a period of five years, and until, as she claims and as the evidence in her behalf tends to show, plaintiff's treatment of her justified her in leaving. Therefore, the case on principle is the same as and should be governed by the law declared in *Schott* v. *Schott*, 168 Cal. 342 [143 Pac. 595]; wherein the court said in part: ''As to the property described in the first deed, defendant's remedy (here it is the plaintiff's) at most, in view of the pleadings and evidence, there being no actual fraud, was an action for damages. As was said in *Lawrence* v. *Gayetty*, 78 Cal. 132 [12 Am. St. Rep. 29, 20 Pac. 385], of a case somewhat similar in principle: 'The plaintiff saw proper to accept the verbal promise of the respondent to do certain things without any agreement or understanding that the failure to do the acts as promised should be a condition, or in any way affect the validity of the deed, or entitle him to a reconveyance.' Under such circumstances, in the absence of fraud, actual or constructive, defendant would have no right to rescind, or to have the deed set aside (citing cases).''

It may be conceded, as plaintiff contends, that where confidential relations exist between two parties, and one of them accepts a conveyance of real estate upon a parol promise that he will hold it for the benefit of the grantor, or for the benefit of some third person in whom the grantor is interested, *and there is no other consideration for the conveyance,* a trust arises by operation of law in favor of the grantor, or in favor of the third person for whom the property is to be held; that it is the violation of the parol promise which constitutes the fraud and gives rise to the trust, and that if it is made in good faith, and is of a continuing nature, the performance of it for a time does not prevent a trust from arising when it is broken and repudiated. (*Cooney* v. *Glynn,* 157 Cal. 583 [108 Pac. 506], and cases cited; *Smith* v. *Lombard,* 201 Cal. 518 [258 Pac. 55]; *Taylor* v. *Bunnell,* 77 Cal. App. 525 [247 Pac. 240]; *Logan* v. *Ryder,* 68 Cal. App. 448 [229 Pac. 993].)

But the mere statement of the rule is sufficient to show its inapplication to the facts of the present case because, as indicated by the above italics, the application of the rule depends upon the proposition that there is no consideration for the conveyance other than the mere promise of the grantee to hold the title for the benefit of the grantor or some third person; and here defendant's joint tenancy estates were not conveyed to her for the benefit of someone else, but, as pointed out, were conveyed to her absolutely in consideration of future personal services which were performed for a period of five years, and also as a reward for faithful services rendered plaintiff without wages during the preceding five years. And although no finding was made as to whether defendant was justified in discontinuing her services in 1924, the evidence, in our opinion, is amply sufficient to support the conclusion that, as she claims, she was warranted in so doing. But whether or not such justification existed would seem to be of little importance in this suit to declare a constructive trust, because, even assuming that such legal grounds did not exist, the termination of her services amounted to no more than a breach of contract, involving no fraud, either actual or constructive, and there being a consideration for the conveyance, a constructive trust did not arise (*Schott* v. *Schott, supra*).

The case of *Cole* v. *Manning*, 79 Cal. App. 55 [248 Pac. 1065], which is emphasized by plaintiff, is not in point here, for there the defendant Mrs. Manning acquired an interest in Cole's property by entering into a meretricious relationship with him, under a fraudulent promise of marriage, which she knew could not be fulfilled because she was already married. It is evident, therefore, that she obtained title through fraud.

Plaintiff also contends for the application of the rule stated in Pomeroy's Equity Jurisprudence (section 1053) and by other text-writers to the effect that whenever the legal title to property is obtained through means or under circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity imposes a constructive trust in the property thus acquired. Here, however, the court found that under all of the circumstances surrounding the acquisition of said property defendant's claim of title was neither wrongful, fraudulent, inequitable, nor contrary to the intention of the parties; also,

that it was not true, as plaintiff alleged, that she was wrongfully and fraudulently endeavoring to gain an unconscionable advantage over plaintiff by virtue of said deed; and it is apparent that these conclusions of the trial court are fully supported by the evidence, for, in addition to the facts hereinabove referred to, the record shows that for ten years she acted in the best of faith toward plaintiff; that during that period of time she not only looked after his personal welfare but worked incessantly to promote his property interests; and that her industry, hard work, and devotion to his interests had much to do with increasing his financial worth during the ten years she labored for him. And, irrespective of whether legal grounds existed for the termination of her agreement after five years' services, she was apparently honest in her belief that plaintiff's treatment of her in 1924 justified her in leaving him.

Under such circumstances it would hardly seem to be in keeping with equitable principles, or in accordance with the evidence in the case, to declare it to be unconscientious for her to retain and enjoy the joint tenancy estate of which she is the legal and rightful owner, and thus deprive her of all of the fruits of her several years' labor. As stated in substance in *Lawrence* v. *Gayetty, supra,* if plaintiff desired to make the termination of the services a condition subsequent to the retention of the title he should have so inserted it in the deed. In any event, the question of whether it would be unconscientious for defendant to retain the estate conveyed to her must necessarily be left to the determination of the trial court, and we fully agree to the conclusion it has reached thereon.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 26, 1929, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 25, 1929.

All the Justices present concurred.