### Isaac and A. J. Roberts v. Parsons.

### Isaac and A. J. Roberts v. Sledd.

(Decided May 12, 1922.)

Appeals from Bourbon Circuit Court.

1. Contracts—Rescission—Fraud.—Courts of equity will not cancel or rescind an executed contract upon the ground of fraud unless

the evidence is clear and convincing as to the existence of the grounds; but that rule is not strictly applied where there exists a confidential relation between the parties, in which case the burden shifts after the establishment of such relation to the one seeking to uphold the contract to show complete fairness in its execution.

2. Contracts—Fiducial or Confidential Relation—Rescission.—Courts view with suspicion contracts between parties occupying a "fiducial" or "confidential" relation, will scrutinize them closely and will rescind or cancel them unless the one claiming thereunder shows by convincing evidence that no fraud was perpetrated or undue advantage obtained.

3. Contracts—Fiducial and Confidential Relation—Rescission.— Technically there is a distinction between the terms "fiducial relation" and "confidential relation," the one applying more strictly to legal relationships rather than to contractual or social relationships; but the latter term includes all of them, and frequently arises where the parties are related by blood, or are joint owners of the subject matter of the contract and one of them possessed superior knowledge concerning it and its character and value, about which the other one was ignorant and had a right to rely upon the one possessing such knowledge to impart the facts. If, under such circumtances, the one upon whom such duty is cast, suppresses the facts and obtains the contract for a wholly inadequate consideration he is guilty of such fraud as will authorize its rescission under appropriate proceedings for that purpose.

4. Contracts—Rescission.—Plaintiffs and defendants were heirs of a deceased distant relative who died a resident of Arkansas childless and intestate. Defendants were her nephews and possessed reasonably accurate information as to the extent and value of her property. Plaintiffs who were more distantly related to the deceased knew nothing of such facts nor did they know of the death of their aunt and possessed a very indistinct knowledge of their relationship to her. After her death defendants procured the appointment of an administrator in the foreign state, and later obtained a contract from plaintiffs by which they purchased their interests in the entire estate for the sum of $1,000.00 each. It was undisputed that the estate at that time was worth between ninety and one hundred thousand dollars, with a possibility of its reaching greatly in excess of that sum. Plaintiffs were not informed by defendants as to the character, extent and value of the property: Held, that the court properly rescinded the contracts, plaintiffs having tendered on the filing of their petitions the considerations they received.

TALBOTT & WHITLEY for appellants.

S. S. YANTIS and HINTON, BRADLEY & BRADLEY for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming the judgment in each case.

Gabriella Crocker died intestate on the 19th of December, 1917, a resident of Augusta, Arkansas. Her husband, J. L. Crocker, had died in June prior thereto and he left a will by which he devised all his property to his surviving widow. They never had any children and Mrs. Crocker owned in her individual name a tract of land containing more than 400 acres, a large portion of which was in a high state of cultivation. She also owned jointly with her husband another tract of the same character of land containing about 449 acres, which, under the laws of the state of Arkansas, became absolutely vested in the surviving spouse at the death of the other, which fact vested the title to it in Mrs. Crocker, after the death of her husband and independently of his will, and she was in any event the owner of as much as 849 acres of land located in Woodruff and White counties in the state of her residence. She also owned some town lots in Augusta and personal property including about $7,500.00 in cash, amounting in the aggregate to between fifteen and twenty thousand dollars. Outside of the jointly owned tract of 449 acres, the husband held title individually to something near 2,000 acres more land, the greater portion of which was valuable more for its timber than for agricultural purposes. He also owned considerable personal property, a large portion of which was, under the laws of that state, distributable to his surviving widow, and which, of course, he could not defeat against her consent by the execution of a will.

The two appellants, who were defendants below, in these two consolidated cases, were nephews of Mrs. Crocker and each of them had visited her home in Arkansas on a number of occasions prior to her death, and both were there when she died and was buried. Isaac Roberts remained some five or six days thereafter, while his brother was there from Thanksgiving day of that year till December 30, and in the meantime they both were instrumental in having the proper court appoint an administrator of the estate of their own selection. Mrs. Crocker left surviving her a number of collateral heirs related to her in different degrees who inherited her property, the defendants each being entitled to a one-eighteenth (1/18) interest therein. A number of those heirs resided in some of the counties in central Kentucky; the appellee and plaintiff below, J. E. Sledd, resided in

Nicholas county and his sister, Mrs. Julia Parsons, plaintiff in one of the suits, resided in Lexington, Kentucky, and they each inherited a one-forty-second (1/42) interest in the estate of Mrs. Crocker. Other heirs resided in those counties as well as in the counties of Montgomery and Clark.

Before the defendant, Isaac Roberts, left Arkansas after the death of his aunt he and his co-defendant concluded that they would purchase the interests in the estate of as many of the heirs as they could and arranged with a local bank for funds necessary therefor. He returned to Kentucky for that purpose, and obtained a written contract from each of the plaintiffs whereby they agreed to convey to defendants their entire interest in the Mrs. Crocker estate for the sum of $1,000.00 to be paid each of them when the proper transfers were made. These contracts were obtained in the first part of March, 1918, and in due time thereafter each plaintiff executed a deed for their respective interest in the Arkansas land and a separate written transfer of their interest in the personalty of the deceased.

These two separate actions were filed in the Bourbon circuit court to cancel those deeds and contracts upon the ground that they had been obtained through fraud and abuse of confidence and for a greatly inadequate consideration. The grounds were more elaborately stated in the petitions, each of which was denied by answers, and after considerable preparation, the court on submission sustained the prayers of the petitions and entered judgments cancelling the deeds and placed the parties *in statu quo* by ordering the consideration of $1,000.00 in each case and which had been tendered with the petition, paid to defendants and entered judgments against them in favor of each plaintiff for $1,490.74, it being the amount they had received on each of the purchased shares of plaintiffs under the first order of distribution of Mrs. Crocker's estate, and to reverse the judgments defendants prosecute these two appeals.

In reaching our conclusion as to the proper disposition of the questions raised, we have not lost sight of the rule requiring the proof to be strong and convincing to authorize the cancellation or rescission of an executed contract upon the ground of fraud in its procurement, which rule has been recognized by this court in a number of cases, two of which are Northern Coal & Coke Co. v. Bates, 146 Ky. 624, and Vanover v. Justice, 174 Ky. 577. But that

rule does not operate with the same rigor where the parties sustain a confidential relation toward each other. In such cases it is quite universally held that when the relation is established the burden is cast upon the defendant to show the perfect fairness of the transaction. Hoeb v. Maschinot, 140 Ky. 330; Smith v. Snowden, 96 Ky. 32; 9 Corpus Juris, 1252; vol. 26 same work, 1076, and 12 R. C. L., 311. But whether there exists a confidential relation or not, it is fraud on the part of the one possessing superior knowledge of the facts affecting the subject matter of the contract to not disclose those facts to the other party if he knows that the former is ignorant thereof and relies and can only rely on him and make a full disclosure. 12 R. C. L. 309; Hughes v. Robertson, 1 T. B. Mon. 215, and Hayes v. Meyers, 139 Ky. 440. This is required in order that the parties may be placed upon an equal footing, and in furtherance of common honesty and fair dealing, the rule being in such cases "that *suppressio veri,* as well as *suggesto falsi,* is a good ground for setting aside a contract." Beard v. Campbell, 2 A. K. Marshall, 125. See also Bowman v. Bates, 2 Bibb 47. That quotation is universally applicable where a confidential relation exists between the contracting parties and it will, therefore, be helpful to determine whether that relation existed between plaintiffs and defendants in these cases.

Some of the courts in dealing with the question of fraud indiscriminately use the terms "fiducial relation" and "confidential relation," referring to them as being synonymous with each other in so far as they affect the good faith dealings between the parties to the relation. There is, however, a technical distinction between the two terms, the former being more correctly applicable to legal relationships between the parties, such as guardian and ward, administrator and heirs, trustee and *cestui qui trust,* principal and agent, and other similar ones, while the latter might include them and also every other relationship wherein confidence is rightly reposed and is exercised, among which, as we have seen, is superiority of knowledge on the part of the one seeking to uphold the contract and confidence reposed in him by the other.

In the publication on the Law of Fraud, by Mr. John W. Smith, in section 23, after enumerating the legal relationships above, it is pointed out that it is not necessary that the relationship should be of that legal nature in order to raise one of trust and confidence, but that it may

under certain circumstances exist between mere relatives; and in section 102 of the same work it is stated that the relationship exists between "joint owners." In section 114 it is said that, "Where a confidential relation exists and there is any misrepresentation, or concealment of a material fact, or any just suspicion or artifice, or undue influence, courts of equity will interpose and pronounce the transaction void, and, as far as possible, restore the parties to their original rights." Following that, and in the next section, it is said: "Where confidential relations exist the party in whom the trust is reposed must prove that the contract is fair and reasonable." It is then stated that as a general rule the burden is upon plaintiff to establish fraud, since it will not be presumed, but that "Whenever, however, the relations between the contracting parties appear to be of such character as to render it certain that they do not deal on terms of equality, but that either on the one side from superior knowledge of the matter derived from a fiduciary relation, or from overmastering influence, or on the other from weakness or dependence, or trust justifiably reposed, unfair advantage in a transaction is rendered probable, there the burden is shifted, the transaction is presumed void, and it is incumbent upon the stronger party to show affirmatively that no deception was practiced, no undue influence was used and that all was fair, open, voluntary and, well understood." In section 126 of the same work the governing rule as to the remedy of cancellation or rescission is thus stated: "To justify a rescission of an executed contract on the ground of fraudulent representations they must relate to a matter not equally open to inquiry on the part of the person to whom made. A favorite expression is that the parties in their dealings must not deal at arm's length. Thus, if the representations relate to property not accessible to examination on the part of the persons to whom made, or if he is ignorant in regard to the subject matter and the other party has superior means of information from experience or special knowledge, recission may be made. Not so, however, if the parties stand upon an equality."

The statements of the writer, to which we have referred, embody the law as administered by all courts so far as we are aware, including this one, as will be seen from the attached cases and authorities, as well as those cited, *supra*. 12 Corpus Juris 421-2; 12 R. C. L. 311-12; Wilson v. Oldham, 12 B. Mon. 55; Singleton's Admr. v.

Kennedy, et al., 9 B. Mon. 222; Thompson v. Randall, 28 Ky. R. L. 716; Culton v. Asher, 149 Ky. 659, and Shacklette v. Goodall, 151 Ky. 20.

From the evidence in this case it appears, and the court so found, that defendants were at least reasonably familiar with the character and value of the property belonging to the estate of Mrs. Crocker, while it conclusively appears that neither of the plaintiffs knew anything whatever about it and relied exclusively upon plaintiffs as to its character, quality and value. Plaintiffs had not learned, until the time they sold their interests, that their aunt or even their uncle was dead, much less that they were in any position, because of intestacy or otherwise, to share in any of the property of either of the decedents. They testified that it was represented to them by defendants that Mrs. Crocker left only 447 acres of land, the value of which was unknown to them, as was also true as to the character and value of the personal property which she left. It was likewise represented to them not only that great indefiniteness existed as to what the entire estate would amount to, but that there was prospective litigation as well as trouble and delay in winding it up. Each of the plaintiffs was poor and in more or less needly circumstances, while defendants, though they attempt to deny it, were evidently familiar with the estate and its condition. Not only did there exist a blood relationship between the parties but they were likewise joint heirs and joint owners in the property and these facts, together with the greatly superior knowledge possessed by defendants concerning the property, created a confidential relationship between the plaintiffs and defendants, which the latter should be required to respect by making a full disclosure of the facts. This the court found, with abundant evidence to support it, that they did not do. The two tracts of land, aggregating 849 acres, after the purchase of plaintiffs' interest, sold for $66,000.00, which with the personal property of Mrs. Crocker and the same class of property she inherited from her husband, even without his will, made her estate amount to a sum in the neighborhood of between ninety and ninety-five thousand dollars, leaving other personal property in the individual estate of J. L. Crocker and land owned by him of something near 2,000 acres. But, if Mrs. Crocker's estate should be deprived of all that by a successful pending contest of her husband's will the fact still remains that de-

fendants did not pay but little more than forty per cent (40%) of the value of the plaintiffs' interest in Mrs. Crocker's estate. So that, we have, not only the concealment of the facts by defendants, who possessed superior knowledge of them, and upon whose true statements the plaintiffs relied, as well as the confidential relationship existing, but likewise a grossly inadequate consideration, which to our minds furnish abundant grounds for upholding the judgments appealed from.

But, defendants' counsel insist that the contracts here involved come within the class known as "chancing bargain" and in support of that contention he cites the case of Hood v. Todd, 139 Ky. 426, and other cases referred to in Caldwell's Kentucky Judicial Dictionary, volume 1, page 485. The most casual reading of those cases by even a layman will be sufficient to show that the doctrine there discussed and upon which those cases are rested is about as far removed from the facts in this case as is the north pole from the south pole. In them the parties stood toward each other upon an equal footing and undeniably dealt at arm's length. Each of them possessed equal knowledge concerning the subject matter of the contract and in none of them did there exist any confidential or trust relation. The facts relating to the subject matter of the contracts were equally known to both parties and each possessed doubts as to the effect of those facts upon the value of the property, and they, therefore, took their chances in entering into the contract. What has heretofore been said thoroughly differentiates those cases from the instant one, and further discussion is therefore unnecessary.

Wherefore, the judgment in each case is affirmed.