[Civ. No. 8411.   First Appellate District, Division Two.—October 5, 1932.]

ROSANNA COOPER WILSON et al., Appellants, v. MARTHA M. COOPER et al., Respondents.

John G. Jury and Cora B. Harding for Appellants.

Hudson & Martin, George Allan Smith, Wyckoff, Gardner & Parker and Gardner & Parker for Respondents.

KING, J., *pro tem.*—The action is in equity to reform instruments alleged to have been procured by defendants through fraud and mistake. The complaint was demurred to generally, and upon the ground that the action is barred by the provisions of section 338, subdivision 4, and by section 343 of the Code of Civil Procedure. The demurrer was sustained and, plaintiffs having failed to amend, their default was entered and judgment rendered for defendants. From this judgment the appeal is taken.

The complaint alleges in substance: That plaintiff Rosanna Cooper Wilson, born December 7, 1859, and plaintiff Delfina E. Cooper, born February 7, 1862 (the latter being now represented by Rosanna C. Wilson as executrix), are children of J. B. H. Cooper, being the issue of his marriage with Iduveguez Soto Cooper, his first wife, now deceased. That J. B. H. Cooper married defendant Martha M. Cooper March 12, 1871, and that the issue of this marriage was J. B. R. Cooper, Abelardo E. Cooper, Alfred H. G. Cooper and Alice F. Dillon (*née* Cooper). That J. B. H. Cooper died June 21, 1899, leaving as his heirs at law his widow, Martha M. Cooper, and the six children. That upon the marriage of their father to Martha M. Cooper the plaintiffs were taken into the home of their father and stepmother and lived there until the marriage of plaintiff Rosanna (about 1880), from which time until 1886 plaintiffs lived on a ranch of their father in Monterey County "not far from the family home in Castroville in said county". In 1886 plaintiffs moved to Fresno, where they have lived ever since 1886. That during all the time from 1886 to the time of their father's death (1899), he kept in touch with plaintiffs by occasional correspondence. That shortly after the death of J. B. H. Cooper said Martha M. Cooper and her son J. B. R. Cooper conspired to cheat and defraud plaintiffs out of their rightful inheritance and share in the estate of their father and to procure the entire estate for themselves and the other children of Martha M.

Cooper. That "pursuant to and in furtherance of said conspiracy and fraudulent scheme" said J. B. R. Cooper visited plaintiffs on July 8, 1899, and "falsely and fraudulently and positively represented" that their father had made deeds to all his real property; that he left no cash and no will, and that the will which he had theretofore made had been revoked, and that only the personal property remained to be administered; that his mother and himself proposed to make a liberal settlement with plaintiffs for their interests as heirs in the personal property left by deceased and to give them more than their share; that he then presented to them for signing four instruments, one of which was executed by plaintiff Rosanna Wilson and her husband, another by Delfina E. Cooper (the other two being immaterial). These instruments in consideration of ten dollars conveyed to J. B. R. Cooper "All real property in the State of California of which J. B. H. Cooper, deceased, was ever at any time seized or possessed." The instruments were acknowledged and were recorded July 10, 1899. Thereupon he paid them $2,500 each in cash and a note for $2,000 each signed by J. B. R. Cooper and Martha M. Cooper.

It is further alleged that upon this visit to Fresno, J. B. R. Cooper, after greeting plaintiffs with kisses of affection and joining with them in mutual expressions of a common sorrow in the loss of their father, and with a design to take advantage of the affection held by the plaintiffs for Martha M. Cooper and J. B. R. Cooper and the remaining children of the family, and to profit by the trust and confidence reposed in him and the said Martha M. Cooper, he made the representations above stated. He asked plaintiffs to trust him and his mother and promised that he would look after all their interests, and that he and his mother would, as administrators of decedent's estate, take charge of everything pertaining to plaintiffs' rights and interests better than they or any other person could do, reminding the plaintiffs of the fact (which plaintiffs both knew) that he was acquainted with the law and that he knew the situation and was in a position to protect plaintiffs' rights and interests in all respects, and he promised to attend to all papers and matters for them in the course of the administration of said estate; and further stated to them that the employment of any attorney by them would be a useless and unnecessary

expense and besides that it would lead to undesirable publicity; that he and Martha M. Cooper at all times concealed the fact that J. B. H. Cooper had, in fact, made a will, and concealed the fact that decedent had appointed said J. B. R. Cooper and said Martha M. Cooper executors thereof, positively representing all such matters to the contrary; and said J. B. R. and Martha M. Cooper also concealed the fact that he and said Martha M. Cooper had during the time of such negotiations, that is between June 24, 1899, and July 15, 1899, either filed said will in the court at San Francisco or had the filing thereof then in contemplation; and at all times J. B. R. and Martha M. concealed the fact that any will had ever been filed by them, whereas, plaintiffs later learned that a will of decedent was filed by them in San Francisco in June or July, 1899, the exact date whereof and the exact character of which will are unknown to plaintiffs because of the false and fraudulent representations aforesaid, and also because of the destruction of all public records of said estate in the San Francisco fire of April, 1906; that plaintiffs were never advised or notified of the filing of any will of decedent or of any proceedings in probate, plaintiffs believing that the estate left by decedent was small and believing also in the assurances of said J. B. R. that plaintiffs were to receive their fair share therein upon such settlement, and that all notices, matters and papers of every character would be looked after and attended to by said J. B. R. for plaintiffs, according to the representations, promises and assurances aforesaid.

It is further alleged that in order to induce the plaintiffs to execute the instruments before mentioned and in furtherance of said fraudulent scheme and purpose, J. B. R. represented to plaintiffs that the instruments were intended to convey all the right, title and interest of plaintiffs in the real property which their father had formerly owned and which he had conveyed to Martha M. and her children, and were, in effect, a mere release or quitclaim to such real property and were sufficient to effect the settlement of all rights of plaintiffs to such personal property left by deceased; that relying upon said false, fraudulent and deceitful representations, and believing them and each of them to be true, and not knowing the true facts, because thereof and also because of said fraudulent concealments by said J. B. R. and said

Martha M. Cooper, the plaintiffs and George A. Wilson, husband of plaintiff Rosanna, executed and· delivered said instruments.

It is also alleged that $9,000 paid upon said settlement was not an unconscionable or inequitable consideration for plaintiffs' shares of the personal property left by decedent, and plaintiffs do not complain of such settlement. It is, however, alleged upon information and belief that the real property of which decedent died seised and possessed was at the time of his death of the reasonable value of between $400,000 and $500,000; that said sum of $9,000 was understood by plaintiffs and intended to be consideration for said personal property interests of plaintiffs in the estate of deceased, and said sums were never intended to be received nor were the same received as consideration for the interests of plaintiffs as heirs at law of deceased in the real property left by him. That in fact, by reason of the mistake of plaintiffs, induced by and through the false and fraudulent representations and concealments hereinbefore alleged, and which mistake defendants J. B. R. and Martha M. Cooper knew and/or suspected, said instruments did not truly express, or does either truly express the intention of the respective parties thereto; that neither of said instruments was intended to convey any interest of plaintiffs or either of them in or to any of the real property of said deceased, and to which plaintiffs, or either of them, would be entitled by right of succession as heirs at law of said deceased.

It is then alleged that the reasonable value of the rightful share of plaintiffs in the personal property of the estate of deceased constituted full and adequate consideration for the sums paid plaintiffs; and that therefore said instruments, so far as they purport to convey any interest in the real property left by decedent, are, and each is, supported by no consideration whatsoever, and wholly inadequate, unconscionable and void.

Then follows an allegation that the real property in question was included in a decree of distribution of the estate of decedent; and an allegation on information and belief that to procure said decree the defendant Martha M. Cooper falsely testified before the superior court in San Francisco that she, the widow, and her four children were the only

children of deceased and his only descendants, and that said Martha M. and her four children were all in court at the time of making said decree and all of her children knew of and abetted the giving of this false testimony, "and each and all of them took under said decree with full knowledge of plaintiffs' said rights and interests as heirs of said decedent, and with full knowledge of the false and fraudulent testimony given in said cause and of the fraud and wrong thereby consummated against plaintiffs". It is then alleged that the distributees under said decree of distribution took the undivided interest of each of the plaintiffs to said real property in trust for the plaintiffs; and that they now hold the same in trust for plaintiffs, and that a like trust is impressed on the rents, issues and profits thereof.

Then follows an allegation that said real estate has increased in value to between $650,000 and $750,000.

And in respect to the trusts and confidences reposed by plaintiffs in Martha M. and J. B. R. Cooper, and to the discovery by plaintiffs of the false and fraudulent character of the representations and concealments charged, it is alleged: that plaintiffs were treated by their father and his wife Martha M. with the same kindness and parental affection as were the other children of the family; that J. B. R., born in 1872, lived in the same family with plaintiffs and the other children and grew up with them, and plaintiffs by reason of said family relations with Martha M. and J. B. R., acquired a sincere affection for them and reposed trust and confidence in them; that during the six years while plaintiffs lived "not far from the family home in Castroville" the same trust, confidence and affection continued; and it also continued thereafter up to, on, or about September 18, 1928, "when plaintiffs received the first intimation of the fraud and deceit practiced upon plaintiffs by said Martha M. and J. B. R. Cooper". Briefly, the allegations regarding this first intimation are: That visiting their stepmother September, 1928, they made a casual inquiry concerning the will which decedent had read to plaintiffs in 1878 in presence of Martha M. and in which plaintiffs and the other children of deceased were treated approximately alike. That on said inquiry Martha M. became greatly excited and angry and told them they had better go. Plaintiffs then surmised for the first time that there was fraud, deceit and treachery

in the whole transaction, and together they proceeded as diligently as they could to uncover the truth in respect thereto. They searched the records, finding the San Francisco records destroyed, as before alleged, and found that decedent had died seised and possessed of the real property which is the object of the action. They also discovered that the representations and statements made by J. B. R. and the concealments made by him and Martha M. Cooper made and carried out while acting as executors of said estate and under the trusts and confidences reposed by plaintiffs in them for many years were wholly false and fraudulent. And plaintiffs learned from a friend to whom they telephoned that he had read the will which was probated in San Francisco and that said will made no mention of plaintiffs, "thus further revealing to plaintiffs the false and fraudulent character of the representations and concealments and acts of said Martha M." and J. B. R. Cooper aforesaid. They further allege that neither Martha M. nor J. B. R. Cooper ever revealed to plaintiffs that decedent left a will or left any real property, but kept said facts covered and concealed at all times and by their positive, false and fraudulent representations to the contrary, and by their said concealments, so fraudulently guarded from plaintiffs, and because defendants thereby induced the belief that the estate left by decedent was small, and caused plaintiffs to refrain from making any independent inquiries, plaintiffs were placed in a position where they could not discover said fraud earlier without entertaining suspicions and a mistrust of defendants unwarranted in view of the representations and assurances made by them while acting under and in apparent pursuance of the trusts and confidences aforesaid.

Then follows an allegation that the various defendants have or claim some interest in the real property described which interest is alleged to be subordinate and subject to that of plaintiffs as to one-ninth each.

The prayer is that plaintiffs be adjudged entitled to one-ninth interest each in the real property described; that the two instruments mentioned in the complaint be reformed and corrected; that all claims of the defendants be decreed subordinate to the interests of plaintiffs; and that defendants be required to account for rents, etc.

It will be noted that: 1. All the false representations and statements charged are alleged to have been made by J. B. R. Cooper. 2. The concealments are charged to both J. B. R. and Martha M. Cooper. 3. It is alleged in the latter part of the complaint that the representations and concealments were made by these two defendants "while acting as executors of said estate". This is evidently an error, at any rate as to the representations made by J. B. R. Cooper, for the representations' were made July 8, 1899, while the allegation as to the admission of the will to probate is that "between on or about June 24th and July 15th, 1899", J. B. R. and Martha M. Cooper either filed said will in the superior court "or had the filing thereof then in contemplation"—so that there is no allegation that he was then an executor. 4. That J. B. R. Cooper was about eight years old when the plaintiffs ceased living with the family and about fourteen at the time plaintiffs moved to Fresno and there is no allegation that plaintiffs ever saw him from this time until July, 1899, when as a young man aged twenty-seven, he made the representations complained of. 5. That the complaint does not aver that plaintiffs ever saw Martha M. Cooper from 1886, when they moved to Fresno, until 1928, when plaintiffs asked a casual question about a will that had been read to them fifty years before. 5. That J. B. H. Cooper, father of plaintiffs, died testate in 1899, and his will was probated in San Francisco and a decree of distribution was made distributing his estate to his widow and her children—but nowhere is there an allegation as to the terms of this will. 6. That at the time the representations complained of were made by J. B. R. Cooper, the plaintiffs were respectively aged thirty-nine and thirty-seven years and at this time, being also the date of the execution of the instruments of conveyance, the husband of one plaintiff at least knew of the transaction, because he signed the paper with his wife. No allegation is made that plaintiffs did not read the papers which they respectively signed, nor that either were in any way of defective mentality.

While the complaint alleges many "concealments" by Martha M. Cooper from the appellants, no statement of any act by her is alleged tending to show a concealment. On the contrary, the first conversation which appellants allege with her after their father's death occurred in 1928, which

is twenty-nine years after his death and just at the time appellants first had their suspicions aroused.

Appellants' claim is that under the circumstances alleged the defendants became and are involuntary trustees of the interests of the appellants in the property described. It is argued that J. B. R. Cooper "besides being executor of the estate voluntarily assumed a relation of personal confidence by agreeing to look after the interests of the plaintiffs in the estate, and hence he was a trustee for the plaintiffs as well as an agent for them". However, the complaint does not show that he was an executor at the time of making the representations, and does show that the plaintiffs at that time parted with their interests and the promise to look after their interests was idle.

This case rests entirely upon the theory that J. B. R. Cooper and Martha M. Cooper occupied with the plaintiffs and appellants a confidential relation. In *Roberts* v. *Parsons,* a Kentucky case reported in 195 Ky. 274, 242 S. W. 594, at page 596, is a discussion of "Fiducial Relation" as distinguished from "Confidential Relation", in which the court says: "Former being more correctly applicable to legal relationship between the parties, such as guardian and ward, administrator and heirs, trustee and *cestui que trust,* principal and agent, and other similar ones, while the latter might include them and every other relationship wherein confidence is rightfully reposed and is exercised, among which is", etc. California cases refer to the former class as a "fiduciary relation". No allegation in the complaint brings the relation between J. B. R. Cooper and/or Martha M. Cooper on the one hand and appellants on the other within the relation defined as fiduciary. In this case is a stepmother and a half brother, not executor and heirs, for they were not appointed when the deeds were executed; not co-owners, for it is not alleged the decedent left appellants any interest in the property by his will (in fact, whatever reference is made to the contents of the will is to the effect that appellants were not mentioned in it); then the relation was not fiduciary. Was it confidential? As to Martha M. Cooper no allegation is made of any representation, nor was any concealment made, if at all, until after the deeds in question were executed. As to J. B. R. Cooper, the complaint shows no communication between him

and the appellants from the time he was fourteen years old until the very date of the deeds. They allege that appellants "lived in the same family" with him, "acquired sincere affection" for him, and "reposed trust and confidence" in him during the time from his birth in 1872 till the marriage of plaintiff Rosanna in 1880. That during the period from Rosanna's marriage till 1886, while plaintiffs lived on a ranch "not far from the family home in Castroville . . . the same trust and confidence and affection continued"; that after plaintiffs removed to Fresno in 1886, and until September 18, 1928, "The said trust and confidence and affection existed and continued". This allegation is made though the only occasion on which appellants saw or met J. B. R. Cooper, so far as the complaint discloses, was on July 8, 1899, when he visited them in Fresno, "greeted appellants with kisses of affection", joined with them in mutual expressions of a common sorrow in the loss of their father, and then made the fraudulent representations complained of and obtained the documents which are the basis of this action. These allegations do not seem to the court to show that a confidential relation existed and without such a showing, the complaint is insufficient and the demurrer was properly sustained.

Respondents further urge that laches is shown which also justifies the sustaining of the demurrer, and in this we agree.

Objection is made by appellants to the terms of the decree of distribution made by the court in the probate proceeding, but in the view of the case, as we see it, a consideration of this point is unnecessary.

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 4, 1932, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 1, 1932.