[Civ. No. 12366.   First Dist., Div. One.   Nov. 12, 1943.]

D. ADAMS, Appellant, v. PAUL TALBOTT, Defendant; HAZEL BLOOM et al., as Executrices, etc. (Substituted Defendants), Respondents; J. M. DUNGAN, Intervener and Respondent.

George Olshausen for Appellant.

Harvey C. Miller and Fred A. Wool for Respondents.

WARD, J.—This is an action to quiet title to certain property conveyed to plaintiff by defendant Paul Talbott, who cross-complained, seeking a reconveyance thereof. A judgment in defendant's favor, dated June 19, 1939, holding that the property was held in trust and directing its reconveyance

upon certain conditions, further declared that an intervener, creditor of Talbott, was the holder of a junior lien on the property in a specified amount. Subsequent to the present appeal by plaintiff, Talbott died, and his daughters, the executrices of his estate, were substituted as defendants and respondents. The intervener has not appealed. For convenience Talbott will be referred to herein as the defendant.

The defendant at the time of the conveyance was a widower eighty-one years of age; he had recently undergone a serious operation, as the result of which he was nervous and excitable; he had also been drinking more than was usual for him, but he was, nevertheless, mentally alert. Business relations between plaintiff and himself over a period of years had been followed by friendly social relations, which had ripened into a regard and affection, demonstrated in embraces and kisses. One witness described plaintiff's manner toward defendant as "loving and sort of gushing like." She gave him business advice, assisted him in negotiating sales, and conducted negotiations for him with bank officials. She also loaned him money from time to time, which was repaid.

The complaint, in the ordinary form of an action to quiet title, recites the deed and a consideration of ten dollars, the conveyance on its face being absolute. The answer was a general denial; the cross-complaint alleged that a confidential relationship existed between the parties; that plaintiff promised defendant that if he would transfer the property to her she would preserve and manage it, from the proceeds thereof pay his debts, discharge an encumbrance on the property, and otherwise aid him in extricating himself from his financial difficulties; and, further, would reconvey the property to him when all of his debts were paid. Defendant prayed that it be reconveyed to him subject to any amount found to be due plaintiff.

The answer to the cross-complaint alleged that defendant was threatened with foreclosure of the property, the value of which was less than the encumbrance against it; that he feared a deficiency judgment, and, because he was a county supervisor, dreaded the humiliation, chagrin and loss of prestige incident to a sale of his property from the "courthouse steps," as plaintiff testified; that he asked her to take over the property, pay his debts and discharge the encumbrance, reserving for himself the right to repurchase the property within one year for a specified amount, with interest; and that these were

the conditions under which the property was conveyed to her. The answer to the cross-complaint further alleged that defendant subsequently advised plaintiff that he would not be able to repurchase the property within the agreed period of time and that, relying thereon, plaintiff improved the property at great expense to herself.

The trial court, with immaterial exceptions, found generally in favor of the defendant. The findings sustain the allegations of the cross-complaint. Specifically the court found that "On and prior to said date, the most confidential relations existed between the plaintiff and the defendant, and the defendant reposed the greatest trust and confidence in said plaintiff, and advised with her in his business affairs, and believed that the plaintiff would deal fairly and justly with him in all things.

"That on and prior to said date, the plaintiff, knowing him to be an old man of ill health, frequently and falsely represented to him, the said defendant, that she was the defendant's special and warm friend; that she was anxious to befriend him, protect and aid him in his business affairs, that she was worth a million dollars and could easily advance money to pay the debts of the defendant; that the plaintiff requested the defendant to transfer said property to her, and promised and agreed that if the defendant so transferred said property to her and let her in possession of the same, she would protect, care for, preserve and manage the same for the plaintiff and in his interest, and out of the proceeds therefrom pay the plaintiff's debts and provide him with sufficient money to furnish him with the necessities of life, and that she would reconvey the said property to him when all of his debts were paid." The reconveyance, however, was never made. As a conclusion of law it was determined that the plaintiff should reconvey the property upon defendant's payment to her of approximately $4,000. The court further found "that . . . it is not true that plaintiff has failed or refused to pay the debts of the defendant as she promised and agreed to do, and in this behalf the Court finds that the plaintiff has complied with her promise to pay the indebtedness of said defendant, out of the trustee estate, except that she did not pay the indebtedness to the Intervener's Assignor." (Appellant in her opening brief states that any ambiguity as to whether she "agreed to use her own money" in the management and preservation of the property is immaterial.) There was a

further finding—that upon a reconveyance of the property, but not otherwise, it should be subject to a junior lien of the intervener. The judgment will be discussed later.

Appellant contends as follows: "First: The oral agreement between the parties was of no legal significance and could in no way modify the deeds on any theory of constructive trust for two reasons: (1) There was other consideration besides the promise to reconvey; (2) The parties were not in confidential relations. Second: The oral agreement is not effective on the ground of actual fraud, because there is no evidence to support actual fraud. Third: If the agreement be considered, the plaintiff is entitled to judgment even under the respondent's version of the facts."

The recent case of *Steinberger* v. *Steinberger*, 60 Cal.App. 2d 116 [140 P.2d 31], involving the relationship of uncle and nephew, wherein the court referred in detail to many cited cases, is of assistance in the consideration of the above contentions. There, as in the present case, the statute of frauds and the parol evidence rule were involved, and it was held (p. 119), primarily upon the authority of *Taylor* v. *Morris*, 163 Cal. 717 [127 P. 66], that fraud arises upon repudiation of a trust even if the trust rests in parol; that (pp. 119, 120): " 'When it rests in parol, either parol evidence must be received to establish the trust, or the faithless trustee will always prevail.' " ". . . a constructive trust arises and will be enforced to compel restitution upon violation of the oral promise." The court further declared (p. 122): "The basis of the confidential relationship exception is that under section 2224 of the Civil Code the equity courts will prevent one person who is in a confidential relation with another from becoming unjustly enriched by reason of a breach of the trust. It would seem, therefore, that a confidential relation in fact should be the test. Under such a test relief would be afforded in practically every case where there is a breach of the oral promise to reconvey. Few cases will arise where one person will convey property to another by absolute deed, and where the grantor will be satisfied with the oral promise of the grantee to reconvey, unless the grantor, in fact, has trust and confidence in the integrity and fidelity of the grantee. The result is that under such a test the exception tends to swallow up the rule to which it is supposed to be an exception. That is exactly what has happened in this state. The cases are clear that where there is some sort of a status between the

grantor and the grantee, and confidence is imposed, a constructive trust will be imposed upon repudiation of the oral promise to reconvey. . . . [Citing cases.]''

The trend of judicial decision on this question is definitely not to confine the application of the principle to established business or blood relationship or the relationship of husband and wife, as in *People* v. *Ahern,* 31 Cal.App.2d 655 [88 P.2d 787], involving an aunt and a nephew by marriage. In *McRae* v. *McRae,* 67 Cal.App. 480 [227 P. 933], the parties were merely engaged, but subsequently married. It was held that a trust had been imposed prior to marriage in respect of the wife's separate estate. In *Anderson* v. *Broadwell,* 119 Cal.App. 130 [6 P.2d 260], the parties were brothers-in-law.

In the transfer of property, if there is evidence of strong affection, high regard and great confidence in the business and personal integrity of the transferee (*Steinberger* v. *Steinberger, supra*), a relationship is created which demands a high degree of fidelity on the part of the transferee.

It is not essential to show a relationship by affinity or consanguinity, or that the business transacted established a particular relationship between the parties, such as attorney and client or principal and agent. If the parties be friends, and the grantor repose confidence in the grantee, especially if in addition there exist an advisory business relationship, and the one reposing confidence be of advanced age, an implied trust may result. (*Bradley Co.* v. *Bradley,* 37 Cal.App. 268 [173 P. 1013]; *Cox* v. *Schnerr,* 172 Cal. 371 [156 P. 509].)

The amount of evidence necessary to establish such relationship ordinarily rests with the trier of the facts. (*Airola* v. *Gorham,* 56 Cal.App.2d 42 [133 P.2d 78].) No rule may be declared which would definitely determine in every case whether such relationship existed. The relationship of husband and wife, or attorney and client, in and of itself lightens the burden of proof borne by the party alleging a confidential relationship, but does not necessarily prove, unless the evidence be clear, satisfactory and legally sufficient, that a trust has been imposed. (*Steinberger* v. *Steinberger,· supra,* contains references and citations interesting on this question.) ''The trust may be enforced where it appears that they were merely friends.'' (25 Cal.Jur., pp. 163-164, sec. 33; *Scovill* v. *Guy,* 205 Cal. 386 [270 P. 934].) In *Bank of America* v. *Sanchez,* 3 Cal.App.2d 238, 243 [38 P.2d 787], the court said: ''The first exception above noted is not limited to those cases

in which there exist confidential or fiduciary relations in the strict sense of those terms as ordinarily understood to apply to persons in various legal relations in which the law imports a fiduciary relationship, but has been extended to every possible case in which a fiduciary relation exists as a fact. Such relation need not be legal; it may be moral, social, domestic or merely personal." (2 Jones on Evidence, 1913 ed., sec. 190; *Cox* v. *Schnerr, supra; Feeny* v. *Smiley,* 115 Cal.App. 597 [2 P.2d 220].)

Appellant calls attention to the finding of the court that there was not only the contingent obligation to reconvey, but also that appellant agreed to discharge the encumbrance on the property and to pay defendant's debts, and that such payments were in fact made. From the findings appellant argues that it is necessary that there be no other consideration for the deed than the promise to reconvey or hold in trust, because the purpose of imposing a constructive trust is to preclude the transferee from being unjustly enriched so that where the transferer receives other benefits the transferee is not unjustly enriched and the transferer does not suffer an injust disadvantage.

Appellant's fundamental concept of the purpose of a decree declaring a constructive trust is correct; it is to defeat or prevent fraud. But the fallacy of appellant's further contention is demonstrated when applied to the facts of this case. It is just as inequitable where the transferer contracts to receive two designated considerations and receives only one, as where he is promised only one and there is a failure to obtain that one. If appellant's theory were correct, a transferee with a fraudulent intent could insert several considerations disconnected one from the other, and thereby prevent the party aggrieved from obtaining a judicial declaration of a constructive trust. In the present case the promise to pay the indebtedness is interwoven with the promise to reconvey. The parties agreed that the transferee should be indemnified from the profits and proceeds of the property. There was to be no reconveyance unless there was reimbursement. The promises, though referred to by appellant as separate, constituted in fact one promise, the first contingent upon the happening of a specific event. The two promises made up but one consideration. Under such circumstances the language used in certain decisions cited by appellant are not

appropriate to the facts in the present case. Relative to recently decided cases, in *Burns* v. *Campbell,* 17 Cal.2d 768 [112 P.2d 237], the decision is based in part upon the distinction between "no consideration" and "inadequacy of consideration." In *Holtze* v. *Holtze,* 2 Cal.2d 566 [42 P.2d 323], it was held that the grounds for a constructive trust were entirely lacking—the three parties therein were to devote their efforts to putting property on a paying basis, and when sold the proceeds were to be divided equally. In that case there might have been an unjust enrichment. Such facts are unlike those here as hereinbefore indicated. ■ Ordinarily the inducement, irrespective of the number of promises, is the factor in determining whether a constructive trust has been raised. Constructive trusts have been declared in California although there appeared consideration additional to the promise to recovery or hold in trust. (*Cooney* v. *Glynn,* 157 Cal. 583 [108 P. 506]; *Bradley Co.* v. *Bradley,* 37 Cal.App. 263 [173 P. 1011]; *Hays* v. *Gloster,* 88 Cal. 560 [26 P. 367].)

It is a matter of indifference "whether it be said that plaintiff is seeking to enforce a voluntary trust which has been repudiated by the trustee or whether it is seeking to enforce an involuntary trust arising in law from that repudiation." (*Bradley Co.* v. *Bradley,* 165 Cal. 237, 240 [131 P. 750].) The inducement, whether expressed in one or more promises, which may be reasonably construed as an entire transaction containing one consideration, is the test in determining the creation of a constructive trust. (*Lasher* v. *Faw,* 209 Cal. 726 [289 P. 821].) In *Airola* v. *Gorham, supra,* though the specific point herein was not raised, it was held that subsequent promises may be considered in determining good faith and inducement as applied to the facts of the case. Upon the facts herein we are not called upon to decide definitely whether two considerations, one independent of the other, may create such a trust.

■ Appellant urges that the allegations of fact creating the confidential relationship, and hence the findings thereon, are insufficient. When the cross-complaint is read and analyzed, there is more than a general averment of such a relationship. If the allegations are separately considered, there may be some merit to the contention, but when considered together a complete story is related which is sufficient in detail to resemble, though based upon slightly different facts, the cases

of *Cooney* v. *Glynn, supra; Cole* v. *Manning,* 79 Cal.App. 55 [248 P. 1065] ; *Brison* v. *Brison,* 75 Cal. 525 [17 P. 689, 7 Am.St.Rep. 189] ; *Becker* v. *Schwerdtle,* 141 Cal. 386 [74 P. 1029] ; *Wilson* v. *Cooper,* 126 Cal.App. 607 [15 P.2d 174], which are founded upon allegations showing a violation of a parol promise and which, if established, constitute the fraud which would give rise to the trust. The evidence is sufficient to support the findings, and the findings justify the judgment on the points thus far considered. ▮ It is the province of the trial, not the reviewing, court to determine the weight and value of the evidence. (*Cox* v. *Klatte,* 29 Cal.App.2d 150 [84 P.2d 290].)

▮ Appellant contends that if the oral agreement is binding as found by the court, there was still no definite time fixed for reconveyance; that under such circumstances a reasonable time has elapsed and that since the defendant has not repaid advances made by her, she is under no duty to reconvey. In support of this contention attention is called to the date of the conveyance to her, the date of the filing of the cross-complaint and that the first offer of payment was not made until some time later. Attention is also called to certain testimony, given by defendant in a supplementary proceeding, wherein he stated in effect that he had no interest in the property and did not expect it to be returned to him.

The contention is without merit. Without discussing the cases cited by appellant, some of which were actions to enforce an oral agreement, which was met by the defense of the statute of frauds and the parol evidence rule, it is sufficient to say that the present action is to have declared a constructive trust, which arose by operation of law upon the repudiation of the promise to reconvey, and because of the unjust enrichment of the promisor. Regardless of any implied time, appellant has been unjustly enriched, and the repudiation definitely occurred when she filed this action to quiet title. The constructive trust could have continued for many years following her repudiation of the agreement. The offer to reimburse may also be considered under another heading.

The judgment herein was entered on June 19, 1939, and notice thereof served on plaintiff on June 21, 1939. In *Adams* v. *Talbott,* 20 Cal.2d 415 [126 P.2d 347], the defendant herein contended that the notice of appeal, filed on November 9, 1939, was from the judgment of June 19, 1939, and that the time for its filing had expired, or, if the judgment be consid-

ered interlocutory, an appeal would not lie therefrom. The court did not determine whether the judgment was interlocutory or final, saying in this regard (p. 418): "If the judgment of June 21, 1939, was interlocutory, the order of October 23, 1939, became a final adjudication of the issues and the appeal therefrom was proper and timely. If the judgment of June 21, 1939, was the final judgment, the order of October 23, 1939, would be a special order made after final judgment and be appealable. (Sec. 963 (2), Code Civ. Proc.)

"The trial court was therefore in error in terminating the proceedings on appeal on the ground that the appeal was filed too late."

In view of our conclusion herein on the vital issues, it is not necessary to consider respondents' contention that the June judgment was final and that the issues, the existence of a trust and the compliance with the oral agreement, adjudicated by that judgment, are issues already adjudicated. If the June judgment was final, there was still something to be adjudicated which could not be considered intelligently without reference to the record prior to the June judgment.

Approaching the next contention of appellant—that under the terms of the June judgment she is entitled to judgment herein, the historical background is specifically set forth in *Adams* v. *Talbott, supra*, pp. 416-417, as follows: "The judgment provided that the plaintiff hold the real property as trustee for the defendant and that she reconvey it to him upon the condition that the defendant pay to her the sum of $4,909.97, together with accruals to be determined by the court on the final account of the trustee. The judgment provided that in the event of failure to perform the condition within ninety days from the entry of judgment the plaintiff would be entitled to a decree quieting her title in the property. Notice of entry of judgment was served on the plaintiff on June 21, 1939. The plaintiff filed a 'First and Final Account of Trustee and Application to Settle said Account and Dismiss Trustee,' on October 10, 1939. On October 16, 1939, the court entered its order that the trust estate was indebted to the plaintiff as trustee in the sum of $2,893.50, and settling and approving the trustee's account. On October 17, 1939, the plaintiff filed a notice of motion for a judgment quieting her title upon the ground that the defendant had not complied with the condition stated in the judgment. On October 23, 1939, the court entered an order denying the motion

based upon a finding that the defendant had been ready, willing and able and had offered to comply with the condition within the ninety-day period, and that the plaintiff forthwith reconvey the property pursuant to the judgment of June 21, 1939.''

It should be noted that on September 13, 1939, defendant requested an accounting as required by the judgment. There is testimony to the effect that at that time the attorney for plaintiff stated that a short delay would be necessary, and in accordance with his suggestion defendant deposited the amount required with an abstract company in escrow, the abstract company advising plaintiff's attorney of the deposit. About a month later the account was settled, and .the next day plaintiff filed a notice of motion for judgment quieting her title to the property. She contended that defendant had not substantially or otherwise complied with the conditions specified by the court to be performed by him within ninety days. Her main contention was that Civil Code section 1500 had not been complied with; that an unconditional deposit to the credit of plaintiff had not been immediately made. *Bourdieu* v. *Baker*, 6 Cal.App.2d 150 [44 P.2d 587] and similar cases are cited as authority in support of this contention. The Bourdieu case involved an option to purchase, in effect an offer to sell, land, which, if accepted unconditionally and upon the exact terms thereof, would constitute a binding agreement. In the Bourdieu case the escrow instructions accompanying a deposit differed so materially from the terms of the agreement as to constitute a rejection thereof. In the present case plaintiff had not expeditiously rendered an account of her trusteeship and defendant could not make a deposit to her credit in accordance with the order of court in the exact amount due until the account was rendered. The defendant herein had been informed by plaintiff of her inability to ''immediately'' render the account; in the Bourdieu case the definite sum of money was not paid within the time limit set. In the Bourdieu case a contract was involved; in the present case an order of court.

In the present case the payment to be made was not of an ascertained amount but, under the order or decree, was dependent upon an ''account rendered.'' If the account was not promptly rendered, the court was qualified and empowered to control, modify or extend by direct order or otherwise the conditions specified in order to conform to and bring about

equity. Plaintiff in this proceeding has invoked equity; she must therefore do equity.

The judgment is affirmed.

Peters, P. J., and Dooling, J. pro tem., concurred.

A petition for a rehearing was denied December 11, 1943, and appellant's petition for a hearing by the Supreme Court was denied January 11, 1944.